## ISABELL BALL GIFFORD

*v.*

## GEORGE ERNST GIFFORD and the PRUDENTIAL INSURANCE COMPANY OF AMERICA.

[Submitted September 20th, 1921.   Decided October 10th, 1921.]

1. A wife who pays premiums on an endowment policy on her husband's life naming her as beneficiary, but providing for payment to the husband if he survived the endowment period, without any expectation that they would be repaid, and with no intention to keep or hold the policy as security, acquires no lien on the fund from the mere payment of the premiums.

2. When such payments are made without. any agreement for repayment or a lien, they are in the nature of gifts to the husband from the wife.

3. The validity of such gifts are not affected and they cannot be set aside because of the husband's subsequent willful and obstinate desertion of his wife, for which the wife obtained a divorce.

On final hearing.

*Mr. Horace C. Grice,* for the complainant.

*Mr. Leonard Kalisch,* for the defendant Gifford.

BACKES, V. C.

Shortly after Mr. and Mrs. Gifford were married, in 1900, the Prudential Insurance Company issued upon each of their lives an insurance policy and endowment bond of $5,000, payable to the insured if he or she survived twenty years, or to the survivor if the insured died within that period. The annual premiums, except the first, were paid by Mrs. Gifford to and including 1909. They separated in 1908, and in 1913 were divorced on her complaint for desertion. Mrs. Gifford collected the cash surrender value of the policy on her life soon after the separation (her

husband releasing), and the endowment on Mr. Gifford's policy having matured the insurance company was about to pay it to him, when Mrs. Gifford filed this bill, claiming a lien for the premiums she had paid. An injunction issued and the Prudential, by leave, paid the money, $4,610, into court.

The gravamen of the bill is that the premiums were paid by Mrs. Gifford upon agreement with her husband that she was to hold the policy as security. The answer sets up that the payments of the premiums were voluntary and a gift from the wife to the husband. I granted the *ad interim* injunction upon Mrs. Gifford's unqualified averment that the policy had been pledged to her, but at the hearing she seemed not to realize that she had so deposed, and I feel she did not intend to. Her affidavit was her counsel's conception of her rights rather than her own. The proofs fail utterly to sustain the allegations of the bill. The evidence shows clearly, in fact Mrs. Gifford admits, that she paid the premiums without any expectation that they would be repaid, either by her husband or out of the fund, and says that she never entertained the idea that she held or kept the policy as security. The mere fact that she paid the premiums does not give her a right to a lien. It is well established that one paying premiums on an insurance policy acquires no lien on the fund unless it is agreed with the beneficiary that he should have one. *2 Joyce Ins.* § *1148; Clack* v. *Holland, 19 Bev. 262; Leslie* v. *French, 23 Ch. Div. 552.*

I have looked beyond the single issue raised by the pleadings, *i. e.*, that the complainant's rights were contractual, to see whether Mrs. Gifford could not have back her money on other grounds, for it would seem but equitable that having sown the fund she ought to get back her seed. But my examination of the authorities satisfies me that complainant's alleged ground for relief—pledge—was the only one she could stand on, and in this she has failed. There are exceptions under peculiar circumstances. For instance, a pledgee of the policy who pays the premiums to protect his security is entitled to be reimbursed out of the fund. *Leslie* v. *French, supra.* So, a joint beneficiary who pays the premium to preserve his interest may call upon his co-beneficiary for contribution out of the fund. *Stockwell* v.

*Mutual Life Insurance Co., 140 Cal. 198; McKerrell* v. *Gowans* (*1912*), *2 L. R. Ch. 648.* It has been held that a person paying the premiums at the request of a beneficiary, whose interest in the policy lapsed by her death before the insured, was entitled to be repaid out of the fund as against the ultimate beneficiaries. *Morgan* v. *Mutual Benefit Insurance Co., 116 N. Y. Supp. 989.* And where premiums or assessments were paid by one under the mistaken idea that he was a beneficiary, equity has ordered that he be reimbursed. *Tepper* v. *Royal Arcanum, 59 N. J. Eq. 321.* But not where the premiums were paid by a nominated beneficiary who knew that he could be deposed, as in *Spengler* v. *Spengler, 65 N. J. Eq. 176.* Aside from these and kindred situations I have found no authority for a lien for premiums paid, except the right rests in contract. And this holds true as between husband and wife. *Leslie* v. *French, supra.* Mrs. Gifford does not come within the category of the exceptional situations. She paid the premiums, knowing her own legal rights and those of her husband under the policy, viz., if he were to die within twenty years she would benefit and if he survived he would take. She had no misconception as to her status, and, consequently, is not entitled to a lien on that score. *Spengler* v. *Spengler, supra.*

The payments of the premiums were in the nature of gifts to the husband from the wife. Mrs. Gifford is a woman of wealth. Mr. Gifford earned a modest salary. The indications are that they lived in a style becoming her means—he contributing towards the family expenditures according to his ability, she supplying the deficiency. He suggested the mutual insurance; she agreed to pay the premiums. Although she half heartedly denied this, the evidence leaves no doubt as to the understanding of the parties, and, indeed, all during the time they lived together in harmony Mrs. Gifford paid the premiums and, apparently, voluntarily and in accordance with the arrangement. She stopped only because they parted company. Now, had Mrs. Gifford carried on—and I have no doubt she would have had they continued together—could it then have been sincerely ventured that the premiums were not gifts and that the husband was not entitled outright to the endow-

ment? There were no·strings to the gifts of the premiums. Each was complete and absolute when made and irrevocable. That the payments were regarded by Mrs. Gifford as donative is to be foundↄ in her letter to her husband written shortly after they separated, in which she asked him to sign a formal sur-render of his interest in the policy on her life, which he did, and wherein she said, "What I want is my policy in my name," and that she would like "Full sway over my own;" and in a con-versation about that time, as Mr. Gifford relates it, and it is not denied, in which he asked her for a like renunciation of her in-terest in the policy on his life, which she refused, for the reason that in the event of his death before the twenty years were up his relatives would get the insurance, although she expressed her-self as perfectly willing that he should have the endowment—to my mind a plain recognition of the gift of the premiums.

The validity of the gifts are unaffected by Mr. Gifford's sub-sequent willful and obstinate desertion of his wife and the di-vorce that followed. Subsequent adultery, desertion or any other marital offence resulting in divorce afford no ground for setting aside gifts made to the offender. *Lister* v. *Lister, 35 N. J. Eq. 49; affirmed, 37 N. J. Eq. 331; Dunbar* v. *Dunbar (1909), 2 L. R. Ch. 639; Converse* v. *Converse, 9 Rich. Eq. 535; Chase* v. *Phillips, 153 Mass. 17.* See note to *Thomas* v. *Thomas, 35 L. R. A. (N. S.) 124.*

I have considered whether an equity exists in favor of Mrs. Gifford on the principle enunciated by Vice-Chancellor Van Fleet in *Black* v. *Black, 30 N. J. Eq. 215,* to the effect that a wife's expenditures upon her husband's estate—their home—are gifts, but that she is entitled to recover them if he thereafter, without justifiable cause, casts her out. There the wife spent her money in the confidence of reaping conjugal happiness and comfort in the home she had embellished, and her disappoint-ment, if unlawfully brought about by her husband's conduct, was a fraud. In the present case, there were no such considerations. The endowment was to Mr. Gifford outright. Mrs. Gifford was not to share in it except, perhaps, incidentally as a wife, and then only according to her husband's inclination.

The bill will be dismissed, with costs, and the money paid into court will be ordered paid to the defendant.

NOTE.—*Black* v. *Black* was taken to the court of errors and appeals and the judgment of that court is reported in *31 N. J. Eq. 798,* as follows: "No written opinion was delivered. The decree of the vice-chancellor (*3 Stew. 215*) was reversed excepting as to the amount due on the $1,000 note." This statement is misleading. The decree below denied Mrs. Black equitable relief for the moneys she had expended upon her husband's estate because of her misconduct, but granted her a money decree on three notes made to her by her husband for money lent. Mrs. Black took no appeal. Mr. Black appealed from the money decree and the court reversed as to two of the notes.