## B. H. James, trading as B. H. James & Company, Appellant, v. Union National Bank, Appellee.

### Gen. No. 7,436.

1. AGENCY—*what does not authorize agent to indorse check.* Where an order for a truck taken by a salesman provided for payment in cash and the salesman on delivering the truck was directed to collect the amount due, such direction and the provision for cash payment did not authorize the salesman to indorse the seller's name on a check presented to and accepted by the salesman as payment, or to cash the same.

2. AGENCY—*duty to ascertain agent's authority.* Persons dealing with an assumed agent are bound, at their peril, not only to ascertain the fact of agency, but the extent of the agent's authority.

3. AGENCY—*inquiries as to agent's authority.* Where the drawee bank paid a check upon the unauthorized indorsement of a salesman of the payee it could not escape liability by showing that such payment was made only after consultation with the maker and upon being informed by it that it was "all right to cash it" and that the salesman was "supposed to have the cash," since information as to the agent's authority to indorse could come only from the payee.

4. BANKING—*when Negotiable Instruments Act inapplicable to unauthorized payments.* Negotiable Instruments Act, sec. 188, Cahill's St. ch. 98, ¶ 210, providing that a check does not operate as an assignment applies only where the bank refuses to cash a check presented to it for payment and is inapplicable where the bank has actually cashed the check on the unauthorized indorsement of one not authorized to receive the proceeds.

5. BANKING—*liability of bank to payee where check cashed on unauthorized indorsement.* A bank cashing a check on the unauthorized indorsement of an agent of the payee, who absconded with the proceeds, is liable to the payee in assumpsit or trover for the amount of the check, and the fact that a check does not constitute a *pro tanto* assignment giving the payee an interest in the depositor's account is immaterial.

6. BANKING—*rights of depositor as to directing payment of check.* While a bank may pay money on the verbal order of the depositor, where the depositor had given a check to an agent of the payee, who was without authority to indorse it, the depositor could not thereafter authorize the bank to pay the proceeds of the check to the agent on the latter's unauthorized indorsement.

Appeal by plaintiff from the Circuit Court of Kane county; the Hon. MAZZINI SLUSSER, Judge, presiding. Heard in this court at the October term, 1924. Reversed and remanded. Opinion filed October 10, 1925.

BENNISON F. BARTEL, for appellant.

LAWRENCE M. McNERNEY, for appellee.

MR. PRESIDING JUSTICE JONES delivered the opinion of the court.

The appellant, B. H. James, doing business as B. H. James & Company, instituted this suit in assumpsit against appellee. The declaration consisted of the common counts and three special counts. Appellee filed its plea of the general issue and, by agreement of parties, a jury was waived and the cause was heard by the court. A judgment was rendered in favor of appellee in bar of the action.

The plaintiff was engaged in the sale of Parker trucks. His place of business was in Chicago and he had in his employ a salesman by the name of F. L. Pruse. On April 26, 1922, Pruse obtained an order from the Elgin Storage & Transfer Company, of Elgin, Illinois, for a Parker truck at the price of $4,283, but took in exchange, and as a part of the purchase price, a Dodge sedan, an Overland sedan and a Dodge truck, at an allowance of $2,283, leaving a balance of $2,000 due the plaintiff. The order was in writing and was subject to the approval of the plaintiff. It was approved in due time and shortly thereafter plaintiff turned over the new truck to the said Pruse, together with invoices, for delivery to the Elgin Storage & Transfer Company. Pruse was instructed to collect the balance of $2,000 due on the purchase price. He drove the truck to his home at Park Ridge on the evening of May 26, and the next morning drove it to Elgin where he delivered it with the invoices to the Elgin Storage & Transfer Company. The Transfer Company after deducting $375 which it claimed

as an allowance on a speed-wagon body, made out its check for $1,625, payable to the order of B. H. James & Company, and delivered it to Pruse. Thereupon Pruse went to the Union National Bank in Elgin, upon which the check was drawn, and presented it for payment. The cashier, A. L. Metzel, being unacquainted with Pruse, called by phone H. C. Muntz, the treasurer of the Transfer Company, and said: "There is a man standing here who wants $1625. Am I to give it to him? The check reads James & Co.". Muntz replied: "It is all right. He delivered a truck to us and is supposed to have the cash. It will be all right to cash it." At the suggestion of the cashier the check was then indorsed on the back "B. H. James & Co." and immediately underneath was written the name "F. L. Pruse." The bank cashed the check. Pruse took the money and absconded. It appears that the cashier of the bank had never seen Pruse before and that he had no acquaintanceship with James. On June 8, 1922, the plaintiff, through his attorney, made a demand on the defendant for the payment of the check, but such payment was refused.

The trial court found as a proposition of fact that Pruse had authority to indorse the check and receive payment thereof. The court also held and refused certain propositions of law which were submitted by respective counsel. In view of the conclusion we have reached with respect to the law applicable to the facts in this case it is unnecessary to set out in full those propositions.

While it is true that the order given by the Transfer Company to James called for a cash payment of the balance due, this provision was one that could be waived. Pruse had the right to receive payment from the Transfer Company. He delivered the truck and accepted the Transfer Company's check payable to B. H. James & Co. for the balance due. No objection was raised to the payment being made in this manner. The only parties concerned in it were the

Transfer Company and the plaintiff. They were the only parties to the contract and no one else had any interest in it or rights under it. The authority of Pruse to collect the amount due did not include authority to indorse the check received for the amount due. (*Jackson Paper Mfg. Co. v. Commercial Nat. Bank*, 199 Ill. 151.) Persons dealing with an assumed agent are bound, at their peril, not only to ascertain the fact of the agency, but the extent of the agent's authority. (*Merchants' Nat. Bank v. Nichols & Shepard Co.*, 223 Ill. 41.) There is no evidence in the case even tending to support the finding of the trial court that Pruse was authorized to indorse and cash the check and the trial court was in error in finding he had such authority.

The difficult question in this case is: Can a bank upon which a check has been drawn be held liable by the payee thereof because of the payment of such check upon an unauthorized indorsement? Prior to the passage of the Negotiable Instruments Act by the legislatures of the several States there was much contrariety of view upon this question. The courts of last resort in a number of the States held that a bank was not liable to the drawee under such circumstances and the courts of last resort in many other States held that there was a liability against the bank.

It is a matter of common knowledge that, as a result of great effort on the part of the legal profession and the commercial interests of the country, all of the States, with perhaps a single exception, have now enacted the so-called Uniform Negotiable Instruments Act. The purpose of this legislation was to obtain uniformity of laws, rules and decisions in matters pertinent to negotiable instruments. Considerable progress has been made in this direction, but the fact cannot go by unobserved that the courts of the several States have not been uniform in their holdings upon this question. It is first contended that the bank is not liable in this case because the

check was not certified or accepted in writing. Section 188 of the Negotiable Instruments Act [Cahill's St. ch. 98, ¶ 210] is as follows: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check." In some States it has been held that under this section the lawful owner of a check can maintain no action against a bank for the nonpayment of a check unless and until the check has been certified or accepted by the bank in writing.

The Ohio Supreme Court in *Elyria Savings & Banking Co. v. Walker Bin Co.*, 92 Ohio St. 406, a case where the bank had paid a check on a forged indorsement, said:

"We are of the opinion that when the legislature enacted section 8294 (being the same as section 188 of the Illinois Statute on Negotiable Instruments) it intended to cover the subject of the liability of a bank to the holder of a check. It prescribed when and when only there is a liability to the holder. In the absence of the conditions therein prescribed, no right of action exists in favor of the holder. In the present case, the checks in question not having been certified or accepted within the meaning of section 8294, there was no right of action on the part of the defendant in error against the banking company."

The Supreme Court of Arkansas has held to the same effect in *Simms v. American Nat. Bank*, 98 Ark. 1. So also has the Supreme Court of Pennsylvania in *Tibby Bros. Glass Co. v. Farmers' & Mechanics' Bank*, 220 Pa. 1. But the rule in those jurisdictions does not appear to be in harmony with the views expressed by the Supreme Court of this State. In *State Bank of Chicago v. Mid-City Trust & Savings Bank*, 295 Ill. 599, the suit was between two banks and not between the true holder of a check and the drawee bank. A depositor drew his check upon the State Bank payable to James Glen. The check was

presented to the bank by some unauthorized person. The bank stamped it: "Accepted for $2060, August 12, 1916, payable through Chicago clearing house when properly indorsed." The check was afterwards deposited in the Mid-City Bank by a man by the name of James Glen, but not the same James Glen who was the payee named in the check. It was paid through the clearing house and in due time was charged by the State Bank to the account of the drawer. While the opinion of the Supreme Court does not deal with the right of a holder of a check, it does discuss the subject of unauthorized indorsements and on page 602 of the opinion the court said:

"The parties to a check are the drawer, the payee and the drawee, and the liability of each is fixed by law. The acceptance or certification of a check by the drawee after it is issued changes the rights of the parties by releasing the drawer, the drawee becoming alone liable for the payment. Therefore, an acceptance stamped on the face of a check, as in this case, without the consent or the knowledge of the drawer or the payee was of no effect."

The question of the liability of a bank to the true holder of a check for payment upon a forged or unauthorized indorsement is conclusively settled in this State in *Independent Oil Men's Ass'n v. Fort Dearborn Nat. Bank,* 311 Ill. 278. Checks belonging to the association and payable to its order were cashed by the bank upon the unauthorized indorsement of J. A. Specht. The facts in the case are very much like those in the case at bar. The bank interposed the provisions of said section 188 of the Negotiable Instruments Act as a defense and the Supreme Court said (p. 280):

"We agree that under the Negotiable Instruments Act the payee of an unaccepted check, who holds it, cannot sue the drawee, * * *. Defendant in error does not contend that it has a right to base its action on the check or on any contractual relation arising out of the check as such. It seeks to recover the value

of its property which came into the hands of plaintiff in error and for which plaintiff in error refuses to account. Defendant in error might have brought an action of trover against plaintiff in error for unlawful conversion of its property, but it chose to waive the tort and to bring its action in assumpsit for money had and obtained for its use. That it had the right to do this is well established by the great weight of authority.''

In the instant case the bank assumed the sole responsibility of treating Pruse as the agent of the plaintiff with authority to indorse his name upon the check and collect the proceeds. It is true that it made some inquiry of the maker of the check, but the information it received related only to the *bona fides* of the check itself. It shed no light upon the authority of Pruse to indorse the check. It is evident that the bank sought the wrong party for information. It should have inquired of the payee to find out if Pruse was authorized to indorse the check. In failing to do this it committed a wrong for which it must answer in damages. It seems to us that section 188 of the Negotiable Instruments Act has no application to the facts in this case. That section is intended to apply to cases where a bank has refused to pay a check and not to cases where the bank has in fact cashed it. In this case, the bank did not refuse to cash the check, but on the contrary it cashed it and paid the proceeds to one who had no right to receive them, wholly ignoring the payee named in the check. Where a drawee bank refuses to pay a check which has not been certified or accepted, the holder's action is against the maker, but where the bank pays it and pays it without authority the bank is liable to the holder. The plaintiff in this case is not suing on the check. The check was taken out of his possession by the bank and now the plaintiff seeks to recover the value of his property which came into the hands of the bank and for which the bank refuses to account.

Appellee also contends that inasmuch as the giving of a check does not constitute an assignment, *pro tanto,* of the depositor's account in the bank, the payee has no interest in such account. This is undoubtedly so, but it must be remembered that the plaintiff is not endeavoring to compel the bank to pay the check out of the funds in the account of the Transfer Company. This suit was brought directly against the bank and if judgment is obtained it will be paid out of the funds of the bank. That the check constituted no assignment of the depositor's funds affords no reason for holding that a bank may negligently pay the proceeds of a check to someone not entitled to receive them. The indorsement on the check was made at the direction of the bank without any effort to ascertain the extent of the agent's authority. The bank might as well have cashed it without any indorsement at all as to have cashed it without knowing what authority Pruse had in the premises. The indorsement was unauthorized, but it was not a forgery. And while the bank cannot be sued on the check, because of the provisions of section 188 of the Negotiable Instruments Act, nevertheless, the payee may treat the conduct of the bank as a tort and sue in trover for conversion for the value of the check or waive the tort and sue in assumpsit. A drawee bank cannot rightfully cash a check payable "to order" without the indorsement of the payee.

It is true that a bank may pay out a depositor's money even on a verbal order of the depositor, but such fact has no bearing on this case. The Transfer Company had given its check to plaintiff. The check was not revoked. It was the property of plaintiff and while the maker might stop payment of it altogether, he had no right, as against plaintiff, to direct that it be paid to someone other than the payee or his indorsee. The check belonged to the payee and if the bank had refused to pay it when presented, then the payee could have maintained an action against the

maker. But when the bank paid the check on an unauthorized indorsement it destroyed all right of action the plaintiff might have had against the maker in case of nonpayment and became liable to the true holder for conversion.

The case of *Louisville & N. R. Co. v. Citizens' & Peoples' Nat. Bank of Pensacolo,* 74 Fla. 385, presents a state of facts very much like those involved in this case and the provisions of the Negotiable Instruments Act above mentioned were construed in the same way as they are here construed.

The findings of fact and the holdings on the propositions of law by the trial court are not in harmony with the views we have expressed and for that reason this case is reversed and remanded.