13253

YARBOROUGH v. PEOPLES NATIONAL BANK

(160 S. E., 844)

*Mr. W. G. Sirrine,* for appellant,

*Messrs. Blythe & Bonham,* for respondent,

October 7, 1931.

The opinion of the Court was delivered by MR. JUSTICE COTHRAN.

There appears to be no controversy over the facts of this case, which are as follows:

In 1907 W. A. Yarborough took out a policy of insurance in the Southeastern Life Insurance Company for $1,000.00, upon his life, payable in the event of his death to his wife, the plaintiff, Susie B. Yarborough, if living, otherwise to his personal representative; the policy was upon what is termed the tontine plan, and provided that, if the insured survived the tontine period of twenty years, he should be entitled to elect one of several options offered him; the insured paid the premiums for 20 years, and in July, 1927, elected to accept the first option, which was "to surrender this policy and to receive a cash payment of $531.00."

A receipt was then executed, signed by both the insured and the beneficiary, acknowledging the receipt of $531.00, "which is the cash surrender value and in full settlement of all claims under Policy Number 1087 issued by the Southeastern Life Insurance Company insuring the life of William A. Yarborough, the said policy being now terminated by surrender thereof"; it was delivered to the company, which transmitted to the insured a check for that amount on the defendant bank; the check was made payable to both the insured and the beneficiary, and stated that it was "for account of cash surrender value" of the policy.

It does not appear that the beneficiary had anything to do with the negotiations between the insured and the company, except to sign the receipt above referred to. The insured indorsed the check, and deposited it to his credit in a Spartanburg bank, which was paid by the defendant bank through the Greenville clearing house.

It appears that later the insured and the beneficiary were divorced, and that she repudiated her signature upon the receipt as having been obtained by false pretenses, and had an indictment preferred against the insured upon which he was tried and acquitted in the Spartanburg Court. Nearly three years later the present action was instituted. It was

tried before Judge Ansel of the County Court of Greenville County without a jury. He filed a decree, dated March 18, 1931, dismissing the complaint, from which the plaintiff has appealed.

It is impossible to sustain a judgment in favor of the plaintiff *for any amount,* under the cause of action alleged in the complaint, the basis of which is thus stated: "Said sum was the cash surrender value as of July 1, 1927, and *plaintiff as the beneficiary of said policy was entitled to receive said sum."* She is now claiming the *whole* of the cash surrender value, $531.00, when as a matter of fact she was not entitled, *under the policy,* to a single cent of it. Ordinarily, when a check is payable jointly to two payees, each would be entitled to one-half of the proceeds. Such right *under the check* is not made the basis of the plaintiff's claim; she cannot recover upon a theory entirely different from that alleged in the complaint.

That the plaintiff cannot sustain the claim upon which the complaint is based, namely, that as beneficiary of the policy she is entitled to the whole of the cash surrender value, is conclusively adjudicated by the authorities.

The check was given to William Yarborough in payment of a policy of insurance upon which all premiums had been paid by him, which *matured during his lifetime,* and under which he was entitled to receive, and did receive, the "cash payment of $531.00." The plaintiff as beneficiary was not entitled to payment under the terms of the policy to anything unless her husband *died before the maturity of the policy* and she was then living.

When the insured elected to take the settlement given him by the policy, the money belonged to him; his wife, the plaintiff, had no interest therein, and the company had no right or power to change the status fixed by contract by giving a check payable to both. Since the money belonged to the insured, payment by the bank to him was properly

made. Since the plaintiff had no interest in the check, the bank owes her nothing, and the decree denying her right to recover is correct.

"The rights of beneficiaries under policies payable to them in case of the insured's death during the term of the policy, but in case the insured survives the term to him, are subject to be defeated by the insured's surviving the term." 14 R. C. L., 1377.

See authorities cited in the decree of his Honor, Judge Ansel, and *Miller v. Campbell,* 140 N. Y., 457, 35 N. E., 651; *Gifford v. Gifford,* 93 N. J. Eq., 299, 115 A., 654; *Travelers' Ins. Co. v. Healey,* 164 N. Y., 607, 58 N. E., 1093; notes, 19 A. L. R., 654.

In *Miller v. Campbell,* 140 N. Y., 457, 35 N. E., 651, the Court held: "Where a policy was payable to the insured's wife for her sole use, if living, upon due notice and proof of his death during the continuance of the policy, but provided that if the insured survived the fifteen-year term the benefit should be payable to him, it was held that the interest of the wife ceased upon the insured surviving the term mentioned, and that the latter was entitled to the amount of the policy."

In *Gifford v. Gifford,* 93 N. J. Eq., 299, 115 A., 654, the Court held: "Where an endowment policy on a husband's life was payable to the wife if the insured died within the endowment period, but to the husband if he survived such period, and he in fact survived it, it was held that he was entitled to the entire benefit, although his wife had paid the premiums, but without any agreement that she should have a lien therefor, since the payment of the premiums by the wife was in the nature of a gift to the husband; and this was held true although he had wilfully deserted his wife, and she had obtained a divorce." Extract from note 19 A. L. R., 654.

In *Travelers' Ins. Co. v. Healey,* 164 N. Y., 607, 58 N. E., 1093, the Court held: "Where a husband secured a policy

insuring his life, payable upon his death to his wife if she should survive him, and, if not, to their children surviving him, and providing that the policy might be converted into cash at the option of the holder at any time after the expiration of fifteen years, it was held that, if the holder should exercise the option, he would become the beneficiary, and that the wife and children would cease to be beneficiaries."

In *Robinson v. Ins. Co.*, 96 Kan., 237, 150 P., 564, it was held in the syllabus that insured was entitled to enforce a stipulation of the application made part of the policy that the reserve value of the policy at the end of twenty years should be paid to himself, even though the beneficiary refused to consent thereto.

The terms of the policy are sufficient to show that the plaintiff had no interest in the cash surrender value which the insured elected to accept. It provides that the policy was "payable at its Home Office to Susie B. Yarborough, his wife, if living, otherwise to his Executors, Administrators or Assigns, within sixty days after satisfactory proof of the death of the insured while this contract is in full force and effect, *subject to the privileges and conditions stated on the second page hereof, which form a part of this contract as fully as if recited at length over the signatures hereto affixed.*"

Among the "privileges and conditions" set forth on the second page of the policy was the following: "This Policy is written on the Elective Investment Plan, and it is further agreed that at the end of the Twentieth Policy year, viz.: The First day of July, 1927, the Insured shall then be entitled, if living, and if the premiums have been duly paid in full, to elect and receive one of the five benefits following: First: To surrender this Policy and to receive a cash payment of $531.00 * * *" (followed by four other options payable *in terms* personally to the insured).

The plaintiff now abandons the claim upon which the complaint is based (that as beneficiary of the policy she is entitled to the whole of the cash

surrender value), and in argument claims at least a half interest in the cash surrender value paid to the insured by reason of the facts that she signed the receipt along with the insured; that the check was made payable to the insured and the beneficiary jointly; that the insured only signed the endorsement of the check; and that the proceeds were paid (indirectly) to the insured alone.

Assuming that she is entitled under the complaint to rely upon this position, it is clear that, as she never had any interest in the cash surrender value, and acquired no interest by the receipt, her position cannot be sustained.

It appears that rights arising out of the payment of a check are quite different from those arising out of its acceptance or certification. A different theory is involved. Under the Negotiable Instruments Act (Civ. Code, 1922, § 3652 et seq.) debtor and creditor relations determine the rights of the payee. The bank owes its depositor the amount of his deposit, but, unless it accepts or certifies the check, it owes no duty to the payee. The act of the bank in accepting or certifying a check is, however, tantamount to a transfer of the deposit account by charging the amount of the check against the maker and agreeing to become responsible therefor to the payee. This is in effect the same as if the check had been debited to the maker and credited to the payee on the books of the bank. The unauthorized payment of the check to another than the holder cannot extinguish the obligation the bank owes to the maker of the check, nor can it be regarded as establishing a contractual relationship with the holder to become his debtor to the amount of the.check. On the contrary, the very nature of the transaction assumes an intent on the part of the bank to extinguish the obligation rather than to create a new relationship of debtor and creditor in respect to it. *National Bank of the Republic v. Millard,* 10 Wall, 152, 19 L. Ed., 879; *First National Bank v. Whitman,* 94 U. S., 343, 24 L. Ed., 229; *Baltimore &*

*O. R. Co. v. First National Bank,* 102 Va., 753, 47 S. E., 837; note (supported by citations of cases) in 14 A. L. R., 764, 766.

A claim by the holder of the check may, generally, be asserted against the drawee bank on the theory of conversion. See note and citation of cases in 14 A. L. R,. at pages 764, 767; also, note in 69 A. L. R., at page 1078. Thus, in *Fidelity & Deposit Co. v. Bank of Charleston* (C. C. A., 4th Circuit) 267 F., 367, 370, where the drawee bank had made payment with full knowledge that the indorsement was unauthorized, the right of action of the payee against the drawee bank was sustained; the decision being placed on grounds stated in the majority opinion of the Court, as follows: "When we come to consider the above authorities, we find that the Supreme Court of the United States has decided only that an action *ex contractu* on the check by payee against the bank before acceptance will not lie, *but it did not decide that an action for conversion could not be maintained.* On the contrary, as in the Millard and Johnston [133 U. S., 566, 10 S. Ct., 390, 33 L. Ed., 683], cases, it is fair to infer that, if it had been shown the bank had charged this check on its books against he drawer, using that as a basis, plaintiff would be entitled to recover on a count for money had and received, and it should be remembered that in the Whitman case it is equally reasonable to infer that an action would lie against the bank, if it appeared that the bank knew the indorsement was unauthorized. Therefore the real question presented in this case has not been directly passed upon in any decision of the Supreme Court." (Italics added.)

If the owner of the check brings an action against the drawee bank based on conversion, the right of recovery unquestionably depends on the proof of damages. The recovery will, in such case, always be limited to the amount of damages established by the proof.

The plaintiff's claim in this case, since it is sustainable only on the theory of conversion, must therefore depend on the showing made as to her damages; and, of course, damages will not be presumed.

In the case at bar, however, the payee was a beneficiary of the policy whose rights, under the terms of the policy, might be divested by the surrender of the policy by the insured in order to obtain its cash surrender value. The insurance company clearly had the right, under "The Elective Investment Plan" of the policy, to pay the cash surrender value of the policy to the insured without assent of the beneficiary to the payment. Of course, this would not preclude the making of separate independent agreements concerning the proceeds of the policy, nor the right of the insured to give any part of the proceeds of the policy to the beneficiary. The difficulty of the present case is, however, that there seems to be neither allegation nor proof of any agreement beyond that expressed in the policy. And there is neither allegation nor proof of instructions from the insured to the insurance company, that in the payment of the cash surrender value of the policy he desired the beneficiary to have a share of the proceeds. Even assuming (a questionable assumption) that the check would afford *prima facies* of intent communicated to the insurance company that the beneficiary should share in the payment, the circumstances of the delivery of the check (which does not appear even to have come into plaintiff's possession) do not carry the understanding into effect in such manner as to amount to a completed gift. 12 R. C. L., 934, 946; *Caldwell v. Wilson,* 2 Speers, 75; *Baker's Adm'r v. Avant,* 1 Nott & McC., 218; *Murdock v. McDowell,* 1 Nott & McC., 237, 9 Am Dec., 684. The plaintiff, therefore, under any view of the case, has not established any claim of right to a recovery of damages on account of the negligent act of the bank in paying the check without the proper indorsement.

It may also be remarked that the plaintiff does not appear to be in much better position even if the Court goes beyond a strictly legal viewpoint to consider in a more personal way the merits of her claim. She knew of her husband's election to take the cash surrender value of the policy. She had signed the receipt under which the payment by check was sent on and the policy canceled. She and her husband were living together at this time, and the proceeds of the check were used in meeting living expenses. It was not until long after the money had been received and used, and differences had arisen between herself and her husband, that she questioned the manner in which payment of the check had been made. Her long delay in asserting any claim at all against the bank, for either the full sum or a share of the proceeds of the check, would seem a quite sufficient justification for the assumption that the payment to her husband and his use of the money had her implied consent and acquiescence, at least, if not her authorization.

In addition to this, the complaint in the case, when made after this long seeming acquiescence in the payment of the check by the bank, sought a recovery for the full amount of the check on the theory that it represented the cash surrender value of the policy, and that the plaintiff, as the beneficiary of the policy was entitled to receive the whole sum. The complaint, therefore, evidences within itself a reliance by plaintiff upon rights claimed under the policy rather than upon the rights claimed under a separate agreement or because of gift. There is nothing in the entire case which appears to indicate that she had any rights beyond those of a beneficiary under a policy which by its terms was clearly subject to the reserved right of the insured to surrender the policy and accept its cash surrender value.

The judgment of this Court is that the judgment of the Circuit Court be affirmed.

Messrs. Justices Stabler and Bonham, and Mr. Acting Associate Justice R. E. Whiting concur.

Mr. Justice Carter (dissenting): This action by the plaintiff, Susie B. Yarborough, against People's National Bank of Greenville, S. C., commenced in the County Court for Greenville County, June 3, 1930, was instituted for the purpose of recovering judgment against the defendant in the sum of $531.00, the amount of a check given by the Southeastern Insurance Company, payable to the order of the plaintiff and her husband, William A. Yarborough, dated July 3, 1927. The allegations of the complaint are as follows:

"1. The plaintiff, Susie B. Yarborough, is a citizen of South Carolina. People's National Bank of Greenville, S. C., is a banking corporation organized and doing business under the laws of United States of America and conducting a bank at Greenville, South Carolina.

"2. On the 13th day of July, 1927, Southeastern Life Insurance Company drew a check on the defendant for Five Hundred Thirty-one and no/100 ($531.00) Dollars, and payable to the order of William A. Yarborough and plaintiff Susie B. Yarborough. The said check was drawn in settlement of a policy issued by Southeastern Life Insurance Company on the life of William A. Yarborough, plaintiff being beneficiary thereof. Said sum was the cash surrender value as of July 1, 1927, and plaintiff as beneficiary of said policy was entitled to receive said sum. On the 18th day of July, 1927, without the knowledge or consent of the plaintiff, defendant paid to William A. Yarborough the said sum of Five Hundred Thirty-one and no/100 ($531.00) Dollars. Plaintiff did not authorize William A. Yarborough to receive said sum nor did she authorize defendant to pay said sum to him. Defendant is indebted to the plaintiff in the sum of Five Hundred Thirty-one and no/100 ($531.00) Dollars with interest from the 18th day of July, 1927, at seven per cent. Demand has been made upon the bank for payment, which has been refused.

"Wherefore, plaintiff prays judgment against defendant in the sum of Five Hundred Thirty-one no/100 ($531.00) Dollars with interest from the 18th day of July, 1927, and the costs of this action."

The defendant in its answer admitted paragraph 1 of the complaint, and interposed a general denial as to the remaining allegations.

The case was tried at the January, 1931, term of said Court before Hon. M. F. Ansel, Judge of said Court, without a jury, and resulted in a decree awarding judgment for the defendant and dismissing the plaintiff's complaint. From said decree and entry of judgment thereon the plaintiff has appealed to this Court. The appellant presents a number of exceptions, but we shall consider only those questions as in our opinion are necessary for a proper determination of the appeal.

While both parties litigant introduced testimony at the trial, there is little or no controversy as to the facts. The issues involved arise concerning the rights and obligations of the parties based on what seems to be a conceded statement of facts.

The check in question was issued by the Southeastern Life Insurance Company (hereinafter referred to as insurance company) dated July 13, 1927, for the sum of $531.00, drawn on the People's National Bank, defendant herein, where the Insurance Company had funds on deposit, payable to the order of the plaintiff and her husband, William A. Yarborough, and was given in settlement of the obligation of the insurance company upon a policy issued upon the life of the said William A. Yarborough, in which policy the plaintiff was named beneficiary. At the time the check was issued, the plaintiff, jointly with her husband, executed and delivered to the Insurance Company the following receipt:

"RECEIPT

"Atlanta, Ga., July 1, 1927.

"Received of the Southeastern Life Insurance Company the sum of Five Hundred Thirty-one Dollars ($531.00) which is the cash surrender value and in full settlement of all claims under Policy Number 1087 issued by the Southeastern Life Insurance Company insuring the life of William A. Yarborough, the said policy being now terminated by surrender thereof.

"WM. A. YARBOROUGH   [Signed]
"Insured.

"SUSIE B. YARBOROUGH   [Signed]
"Beneficiary.

"Witnesses:
"N. BRANDT   [Signed]
"TOMMIS L. JUSTUS   [Signed]"

Thereafter the defendant bank paid to William A. Yarborough the full amount of the proceeds of the check, without the indorsement of the plaintiff and without any authority from her, and charged the amount to the account of the Insurance Company. The check contained only the indorsement of William A. Yarborough. Some time later, when the plaintiff learned what had been done, she made demand on the defendant for payment of the amount of the check. She stated to the officers of the bank that she was entitled to at least half of the amount specified in the check, and, upon refusal of the bank to make payment to her, this suit was instituted.

Although the receipt for the settlement of the policy was executed by Susie B. Yarborough and William A. Yarborough, jointly, and the check executed and delivered to them, made payable to the order of the two, it was held by the trial Judge, and is contended by the respondent, that the plaintiff, Susie B. Yarborough, has no interest in the check

or the money involved. This holding and contention seems to be based on the following provision of the policy:

"This policy is written on the Elective Plan, and it is further agreed that at the end of the twentieth policy year, viz.: the first day of July, 1927, the insured shall be entitled, if living, and if the premiums have been duly paid in full, to elect and receive one of the five benefits following:

"First: To surrender this policy and to receive a cash payment of $531.00.

"Second: To surrender this policy and to receive a paid-up policy for $1,333.00, payable at death (no certificate of health will be required); or

"Third: To continue the original policy of $1,000.00, as a paid-up policy for life, and to receive a cash payment of $132.00; or

"Fourth: To receive a paid-up policy for life for one-half of the original amount insured, viz.: $500.00 and a cash payment of $331.00; or,

"Fifth: To receive an annuity for life for $32.38.

"Unless the insured notifies the company in writing, before the end of the investment period which benefit he elects, the company will settle in accordance with the third benefit."

Under my view of the case, whatever rights the plaintiff had in the insurance policy referred to were concluded by the execution of the receipt shown above and the acceptance of the check in question issued by the insurance company and made payable to the order of the two, Susie B. Yarborough and William A. Yarborough. The policy, in my opinion, was not a subject of investigation or consideration by the trial Court. It is referred to in the allegations of the complaint merely for the purpose of giving the history of the check, and the answer makes no reference to it. The policy is not made an issue under the pleadings. Even if, as contended by the respondent, the plaintiff had no interest in the settlement made by the insurance company, and was not entitled to any portion of the money the company paid in

settlement of its obligation under the policy, the parties, William A. Yarborough and the insurance company, in the absence of fraud or mistake, would now be precluded from making such contention. They do not make such contention, in fact, are not parties to the action, and the defendant has not interposed the plea of mistake or fraud. Furthermore, what difference could it make to the defendant whether or not the plaintiff had an interest in the policy or the settlement made thereunder? It is conceded that the insurance company had on deposit with the defendant bank sufficient funds with which to pay the check in question, and it was defendant's duty to pay the same when presented properly indorsed. The check being made payable to the order of William A. Yarborough and Susie B. Yarborough, it should not have been paid without containing the indorsement of both of these parties. Even if making the check payable to the order of the plaintiff jointly with her husband was intended as a gift to her, it was, nevertheless, under the admitted facts, a perfected gift, and therefore an executed contract, and she could not be deprived of her rights thereunder without her consent, 28 C. J., 621.

In the decree issued in the cause, the contention is made that all of the proceeds of the check were used by plaintiff's husband in the payment of debts contracted by her. The debts in question were made for the purchase of the necessities of life, wearing apparel, etc., while Mr. and Mrs. Yarborough were living together as man and wife, and the husband was legally bound to furnish those things. Furthermore, the bank had no right to pay to her husband money she was entitled to even for the purpose of paying any legal obligations she might have. Neither the husband nor the bank could in any legal sense be considered her guardian, and they had no right to assume that role.

In this connection I may add that plaintiff's counsel objected to all testimony offered by the defendant concerning the terms and conditions of the policy and the interest Mr.

Yarborough took thereunder, as well as the testimony concerning the application of the proceeds of the check. In my opinion, the trial Judge was in error in admitting this testimony. Further, when the plaintiff attempted to introduce testimony for the purpose of showing her interest in the check, the trial Judge ruled such testimony incompetent. If the defendant had the right to be heard on that line, the plaintiff also had such right. This was prejudicial error, and at least entitles the plaintiff to a new trial, if the policy referred to is to be considered an issue.

In accord with the holding of the trial Judge, it is the further contention of the respondent that, even if the plaintiff had an interest in the proceeds of the check, this action cannot be maintained. As I understand the position of respondent's counsel, the action could have been maintained before the adoption of the Negotiable Instruments Law, but that since the adoption of that law such an action cannot be maintained. In support of their position our attention is called to the following sections of Volume 3, Code of Laws 1922, of South Carolina:

"(3840) *Check Not Assignment of Funds.*—A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check."

"(3836) *Check.*—A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this article applicable to a bill of exchange payable on demand apply to a check."

"(3838) *Certified Check.*—Where a check is certified by the bank on which it is drawn, the certification is equivalent to an acceptance."

"(3783) *Article II—Acceptance.*—The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee

will perform his promise by any other means than the payment of money."

On this point counsel for respondent state their position thus:

"The basis of liability before the Act, as shown by the language quoted, was the privity between the payee and the bank arising because of the fact that the check operated as an assignment of the deposit, and therefore acceptance was unnecessary to create liability.

"Under the law as it now exists in this State, the check does not operate as an assignment, and the drawee bank is liable only where it accepts the check in writing. From this it follows that the mere payment of a check is not an acceptance required by the Act, and the authorities so hold."

In further support of their position, they quote as follows from the opinion in the case of *Federal Land Bank v. Collins,* 156 Miss., 893, 127 So., 570, 574, 69 A. L. R., 1074: "We have already seen that our own Court has repudiated the assignment *pro tanto* theory, and since the adoption of the Negotiable Instruments Act by this State we are compelled to say that payment of a check is not equivalent to accepting a check in writing and signing the name of the acceptor thereon. Payment of the check and the charging of same to the drawer does not constitute an acceptance. Payment of the check is the end of the voyage; acceptance of the check is to fuel the vessel and strengthen it for continued operation on the commercial sea. What we have said applies to the holder and not to the drawer of the check. On this question we conclude that the general rule is that an action cannot be maintained by a payee of the check against the bank on which it is drawn, unless the check has been certified or accepted by the bank in compliance with the statute, even though at the time the check is presented the drawee bank has funds belonging to the drawer of the check out of which the check is legally payable; and that the payment of the check by the bank on which it is drawn, even

though paid on the unauthorized indorsement of the name of the holder (without notice of the defect by the bank), does not constitute a certification thereof, neither is it an acceptance thereof; and without acceptance or certification, as provided by statute, there is no privity of contract between the drawee bank and the payee, or holder of the check."

As I understand the holding of the trial Judge and contention of respondent's counsel, relying upon the sections of the Negotiable Instruments Law, which I have quoted above, and the rule declared in the *Mississippi case, Federal Land Bank v. Collins, supra,* while a drawer of a check may have redress against a drawee bank for the failure to pay the check when presented, the payee of the check has absolutely no redress against the drawee bank for refusing to pay the check when presented (even though the drawer has ample funds on deposit to pay the check), unless and until the drawee bank certifies or accepts the check, and that such certification or acceptance must be in writing and signed by the drawee bank; that the payment of the check and charging the same to the account of the drawer is not an acceptance; and that, if the drawee bank sees fit to receive the check and pay the proceeds of the same to a party not entitled thereto, the payee has no redress against the drawee bank, upon the ground that there is a lack of privity between the parties. This position of respondent seems to be in harmony with the holding of the Supreme Court of the State of Mississippi in the above-named case, *Federal Land Bank v. Collins, supra,* with which holding we are unable to agree. For the purpose of a clearer understanding of the holding of that Court, we quote the following from the opinion in said case:

" 'It is further contended that such an acceptance of the check as creates a privity between the payee and the bank is established by the payment of the amount of this check in the manner described. This argument is based upon the

erroneous assumption that the bank has paid this check. If this were true, it would have discharged all of its duty, and there would be an end of the claim against it. The bank supposed that it had paid the check; but this was an error. The money it paid was upon a pretended and not a real indorsement of the name of the payee. The real indorsement of the payee was as necessary to a valid payment as the real signature of the drawer; and in law the check remains unpaid. Its pretended payment did not diminish the funds of the drawer in the bank, or put money in the pocket of the person entitled to the payment. The state of the account was the same after the pretended payment as it was before.

" 'We cannot recognize the argument that a payment of the amount of a check or sight draft under such circumstances amounts to an acceptance, creating a privity of contract with the real owner. It is difficult to construe a payment as an acceptance under any circumstances. The two things are essentially different. One is a promise to perform an act, the other an actual performance. A banker or an individual may be ready to make actual payment of a check or draft when presented, while unwilling to make a promise to pay at a future time. Many, on the other hand, are more ready to promise to pay than to meet the promise when required. The difference between the transactions is essential and inherent.'

"Counsel for appellant cite other cases holding that the stamping of the check 'paid' and the changing of the amount thereof to the drawer constituted an acceptance, but we are of opinion that none of these cases cited hold that it is in compliance with the Negotiable Instruments Act; paying the check and stamping same is not the equivalent of accepting the check in writing signed by the drawee. The cases holding that payment as indicated above constituted acceptance were rendered prior to the adoption of the Negotiable Instruments Act in the particular state, and these decisions are divided into two classes; the one holding that the check de-

livered by the drawer to the holder and presented to the bank or drawee constitutes an assignment *pro tanto;* the other holding that the payment of the check and the charging of same to the drawee although paid to an unauthorized person creates privity of contract between the holder and the drawee bank."

I have quoted at length from the opinion of the Court in the *Mississippi case* because of the emphasis placed on the same by respondent's counsel, but I do not feel called upon to enter upon a general discussion of the case, and deem it sufficient to state that, while I entertain the highest respect for that Court, I am unable to agree with its holding on the point in question before this Court in the case at bar. The recognized rule of force in this State as to the rights of a payee of a check against a drawee bank, before the adoption of the Negotiable Instruments Act, was clearly stated by Mr. Justice Jones, later Chief Justice, in the case of *Loan & Savings Bank v. Farmers' & Merchants' Bank,* 74 S. C., 219, 54 S. E., 364, 368, 114 Am. St. Rep., 991, in the following language: "Whatever may be the rule in other jurisdictions, it is settled in this State that a check on a bank operates as an assignment *pro tanto* of the drawer's deposit account or fund in bank, and that there is privity between the bank having the necessary fund on hand and the check holder, certainly upon presentation of the check for payment so as to give the holder a right of action against the bank wrongfully refusing payment. *Fogartices & Stillman v. Bank,* 12 Rich., 518, 78 Am. Dec., 468; *Simmons v. Bank,* 41 S. C., 177, 19 S. E., 502, 44 Am. St. Rep., 700; *Leaphart v. Bank,* 45 S. C., 569, 23 S. E., 939, 33 L. R. A., 700, 55 Am. St. Rep., 800. Under this view it is not essential that the drawee bank shall accept or assent to the check in order to fix upon it liability to pay the check holder. The bank's liability is fixed by its contract with the depositor, the due presentation of the check, and the possession of sufficient funds of the depositor to pay."

It is true, under the law of this State, as changed by the adoption of the Negotiable Instruments Act, the check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the Act further provides that the drawee bank is not liable to the holder, unless and until it accepts or certifies the check. However, there is no provision in the Act which could be construed as intended to prohibit the drawee bank from making payment to the payee when the check is presented for that purpose, regardless of whether the bank has certified or accepted the check or not. The handling of checks in this manner is the practice in the banking world, and, according to my view, the payment of a check when presented for that purpose and charged to the account of the drawer amounts to an acceptance. For all practical purposes it is an acceptance. This is certainly true as between the payee and the drawee bank. The drawer is out that amount, and some one is in that amount. The drawee bank has no right to hold the money for the benefit of itself, and is duty bound to pay it out, but must make payment to the rightful party, the party legally entitled to receive it. (In this connection I repeat what I stated and called attention to at the beginning of this opinion. The check showed on its face that the plaintiff had a joint interest in the same with her husband. Whatever rights Mr. and Mrs. Yarborough had under the terms of the policy referred to were determined and concluded at the time of the settlement between the parties and the signing of the receipt by Mr. and Mrs. Yarborough and the issuance of the check by the insurance company payable to the order of the two; and such questions were not matters of inquiry for the drawee bank or the trial Court, and are not questions of inquiry on the appeal to this Court.) To permit the drawee bank to receive and take into its possession a check, stamp it paid, charge it to the account of the drawer, and knowingly or negligently deliver the proceeds of the check to a party not entitled to the same, without be-

ing accountable to the payee, is, according to my view, contrary to all law and justice, and this Court is unable to approve such holding.

While the holdings of the Courts in several jurisdictions seem to be in harmony with the principle announced by the Supreme Court of the State of Mississippi in the case of *Federal Land Bank v. Collins, supra,* the Courts in a number of other jurisdictions do not agree with such view. The Supreme Court of the State of Iowa, in the case of *Hove v. Stanhope State Bank,* 138 Iowa, 39, 115 N. W., 476, held that the rule declared by reason of the Negotiable Instruments Act was not applicable where the drawee bank wrongfully parted with the fund, to favor one claimant over another. The same principle was also announced by the Iowa Court in the case of *Dolph v. Cross,* 153 Iowa, 289, 133 N. W., 669. In support of my position I call attention to the following statements, which I take from the Editor's Notes, under the case of *Federal Land Bank v. Collins, supra:*

"In *James v. Union Nat. Bank* (1925), 238 Ill. App., 159, it was held that the section of the Negotiable Instruments Act providing that 'a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check,' has no application to a case in which the true payee of a check brings an action against a drawee bank that cashes a check upon a forged or unauthorized indorsement, as the section above quoted was intended to apply to cases *where a bank had refused to pay a check, and not to cases where the bank had in fact paid it.* (Italics ours.)

"In *James v. Union Nat. Bank* (1925), 238 Ill. App., 159, it is said that the drawee bank which cashes a check upon a forged or unauthorized indorsement, though it *may be sued by the true payee in trover for a conversion of the value of the check or in assumpsit as for money had and re-*

*ceived,* cannot be sued on the check, in view of § 188 of the Negotiable Instruments Act, providing that 'a check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check.' " (Emphasis ours.)

In connection with what is stated by the Illinois Court in the above-named case regarding the form of the action, I at this time call attention to the statement appearing in the first paragraph of the decree in the case at bar to the effect that this is an action in assumpsit for debt. Under the Code of South Carolina, forms of action, in a sense, may be said to have disappeared, and the Courts of this State are no longer restricted in granting relief on account of the form of action, but may give such relief as the facts established in response to the allegations warrant and the justice of the case may require. However, I may state that, while the form of action is not a matter of inquiry in the case at bar, so far as the rights of the plaintiff are concerned, the acts of the defendant may be said to amount to a conversion of the money involved. The defendant certainly got the money, and what it did with it thereafterward, whether it devoted it to its own use or paid it to some one not entitled to receive it, the damage to the plaintiff was the same.

I further quote from "Annotation" under the report of the case of *Federal Land Bank v. Collins, supra,* as follows:

"The drawee bank that cashes a check upon the forged or unauthorized indorsement is liable to the true payee in an action of assumpsit as for money had and received. *James v. Union Nat. Bank* (1925), 238 Ill. App., 159."

"The drawee bank that cashes a check upon an unauthorized indorsement is liable in an action for conversion to the true payee, who has received no benefit from the proceeds. *Bentley, M. & Co. v. La Salle Street Trust & Sav. Bank* (1916), 197 Ill. App., 322; *James v. Union Nat. Bank*

(1925), 238 Ill. App., 159; *Kentucky Title Sav. Bank & T. Co. v. Dunavan* (1924), 205 Ky., 801, 266 S. W., 667; *Spaulding v. First Nat. Bank* (1924), 210 App. Div., 216, 205 N. Y. S., 492 (order affirmed in [1924], 239 N. Y., 586, 147 N. E., 206)."

"In *Bentley, M. & Co. v. La Salle Street Trust & Sav. Bank* (1916), 197 Ill. App., 322, the Court states that cases opposed to this view are all cases where the payee of the check brought assumpsit, and it was held that, because of the lack of contractual relations between the payee and drawee, assumpsit could not be maintained; and that the decisions in these cases have no application to a case where the payee alleges the conversion of the check."

"In an *Arkansas case, Wayne Tank & Pump Co. v. Bank of Eureka Springs* (1927), 172 Ark., 775, 290 S. W., 370, where the drawee bank paid a check upon the unauthorized indorsement of the agent of the payee, the drawee was held liable to the payee for the amount of the check."

"In *Kentucky Title Sav. Bank & T. Co. v. Dunavan* (1924), 205 Ky., 801, 266 S. W., 667, the Court said: 'However, Dunavan (payee) was the legal owner of the check; the drawee bank had on deposit to the credit of the drawer sufficient funds to pay it; that bank received the check, admitted its genuineness, and admitted liability thereon by appropriating the funds of the drawer to its payment and charging it to the drawer's account, thus assuming entire control over it, and retaining it from the rightful owner. Not only that, but months afterwards, when this suit was brought, it denied all allegations as to the forger's culpability, and affirmatively pleaded that he had authority to indorse and collect it, thus still asserting its right to the check as against the true owner. Clearly this constitutes a case of conversion, and, as it has appropriated funds deposited to meet it, to the payment of the check, it becomes liable to the owner for that amount for the conversion, independent of the statute."

While I regard all of the authorities I have cited in point, especial attention is called to the statement last quoted from the case of *Kentucky Title Sav. Bank & T. Co. v. Dunavan, supra.* The facts involved in that case seem to bear a strong similarity to the facts in the case at bar.

For the reasons herein stated, I think that the exceptions raising the questions I have discussed are sustained. I express no opinion as to the remaining exceptions.

I think the judgment of the lower Court should therefore be reversed and the case remanded for entry of judgment for the plaintiff against the defendant in the sum of $265-.50; and, in any event, the case should be remanded for a new trial because of the prejudicial error pointed out herein in refusing to permit the plaintiff to introduce testimony on a matter on which the defendant was allowed to offer testimony.