**John Gordon MORGAN, Appellant,**

v.

**E. J. EVANS COMPANY, Appellee.**

**No. 17472.**

United States Court of Appeals
Fifth Circuit.

April 20, 1959.

Rehearing Denied June 5, 1959.

R. Bruce Jones, Jones, Adams, Paine & Foster, West Palm Beach, Fla., for appellant.

T. J. Blackwell, Robert Asti, Melvin T. Boyd, Blackwell, Walker & Gray, Miami, Fla., for appellee.

Before RIVES and TUTTLE, Circuit Judges, and SIMPSON, District Judge.

TUTTLE, Circuit Judge.

In 1937 John Gordon Morgan was a stockholder, officer and director of the E. J. Evans Company. On January 7th of that year, on an application signed by him, a policy of endowment and life insurance was issued on Morgan's life. All

premiums were paid by the Evans Company. The beneficiary provisions were as follows:

"—The E. J. Evans Company, Incorporated, Van Wert, Ohio—(herein called the Beneficiary).

"Upon receipt of due proof of the death of the Insured *before the maturity of this Policy as an endowment * * *.*" (Emphasis added.)

Endowment provisions were as follows:

"Beginning upon the 7th day of January, 1957, if the Insured be then living, and all premiums have been duly paid, the Company will pay to the Insured, *without the consent of the beneficiary named herein,* whether the beneficiary designation be revocable or irrevocable, the sum of One Hundred Dollars per month and subsequent payments on the 7th day of each month thereafter until One Hundred such monthly payments certain have been made, and as long thereafter as the Insured may live." (Emphasis added.)

A rider attached to the policy contained the following language:

"The beneficiary named in the above numbered policy is The E. J. Evans Company, Van Wert, Ohio, a corporation; and the net proceeds of said policy shall be paid to said beneficiary by The Ohio State Life Insurance Company, if and when the said policy shall become a claim through the death of the said Insured.

"The said policy was purchased with the intent that the net proceeds thereof might be used by said The E. J. Evans Company toward the purchase of the shares of the stock of said The E. J. Evans Company owned by said John Gordon Morgan, the above named Insured, at the time of his death, and it is the desire of the undersigned, and of each of them, that the net proceeds of said policy be used by said The E. J. Evans Company toward the purchase of the shares of the stock of said The E. J. Evans Company owned by said John Gordon Morgan at the time of his

death; however, it is expressly directed and agreed by the undersigned, and by each of them, that said The Ohio State Life Insurance Company shall not be authorized nor under any obligation to see to the use of said net proceeds or of any part thereof by said The E. J. Evans Company toward the purchase of such stock or otherwise, and that said The Ohio State Life Insurance Company shall be completely and finally absolved, relieved and discharged of and from all liability of any and every kind under or arising out of said policy or in respect of the net proceeds thereof by and immediately upon payment of the net proceeds thereof to said The E. J. Evans Company.

"This Agreement is and shall be binding upon each of the undersigned and upon their respective heirs, executors, administrators and assigns.

"Executed in duplicate this 11th day of January, 1939, at Van Wert, Ohio."

This document was signed by Morgan, the insured, and by Karl W. Todd, an officer of the Evans Company, the named beneficiary.

Morgan severed his connection with the Evans Company in 1944, at which time he sold his stock to the company for $75,000. He also signed an agreement upon receipt of an additional sum of $1,156 that this sum was "in full settlement of all debts, demands, claims of whatsoever kind or nature the said Morgan may have or claim to have against said company and the officers and shareholders thereof."

The insurance policy showed up on the desk of the company's lawyer shortly after the separation of the parties. On the envelope containing it were the words in Morgan's hand: "Kerns Wright Office." Wright was the company lawyer. Also these words in Todd's hand: "2/1/52—Cash before January 1957—if Gordon Morgan is still alive."

It was not established where the policy had been prior to 1944, although Morgan testified that he had not had personal possession of it.

In 1955 the company sought to surrender the policy for its cash value, but the insurance company refused to cash it without written consent of the insured, Morgan. Morgan declined to give his consent, and this action was commenced by Evans to require it. The Court held that the cash proceeds of the policy belonged to the company as named beneficiary, and ordered that Morgan "execute such documents and papers as may be necessary to effect the formal assignment to plaintiff of his rights and interest under" the policy.

It is from this judgment that this appeal was taken.

The trial court's judgment was based on two separate legal conclusions. The first was: "The insurance policy in question in this case was acquired at the expense of and for the benefit of the plaintiff. The policy was an asset of the plaintiff corporation. As such any rights or privileges the defendant had under the terms of the policy were held in trust by him for the plaintiff."

The second basis assigned by the court for its ruling was that Morgan had, by putting the policy on Wright's desk, "assigned whatever interest that he possessed in the policy at the time he severed his connection with the company," and also, "It was also the intention of the parties that defendant would have no further claims against plaintiff as expressed in the termination agreement [quoted *supra*]."

We conclude that in these conclusions and in its judgment based on them, the trial court erred.

■ It cannot be questioned, we think, but that the insurance contract by plainest terms provided for conditional benefits for the two parties to this litigation. There is no indication as to why, in order to provide funds for the purchase of Morgan's stock in case of his death, the company should take out the more expensive endowment policy. But it is clear that this is what was done. Moreover, it is clear that the stated condition under which Evans would become the beneficiary did not occur, i. e., the death of Morgan "before the maturity of this policy as an endowment." The maturing of the policy as an endowment thus, in the language of the policy, terminated the company's interest in the policy unless the circumstances of the relations of the parties require the court to fasten a trust on the proceeds or other rights in the policy to which, under the terms of the policy, Morgan became entitled.

The trial court and appellee in its brief lay great stress on Wellhouse v. United Paper Co., 5 Cir., 29 F.2d 886, as supporting the court's conclusion that in such a situation as this the policy must be held as matter of law for the sole benefit of the employer company. Reliance was also placed by the trial court on Mims Hotel Corp. v. Commissioner of Internal Revenue, 4 Cir., 185 F.2d 55. It is not even cited in appellee's brief. It is not in point.

The vital distinction between the Wellhouse case and the one before us is that the policy in Wellhouse did not name the company as a conditional beneficiary and Wellhouse as beneficiary if the condition was not met. This made it possible for the court to say: "In obtaining the policy the insured acted, not for himself individually, but for the paper company, which paid for the insurance," and also: "The insurance having been acquired at the expense and for the benefit of the paper company, that company was the owner of the policy and the beneficiary of its provisions." [29 F.2d 887.]

■■ Such is not the case here. The policy here sued on is on its face for the benefit of both parties—the company if Morgan dies before endowment matures, and Morgan if he does not. There is nothing unusual, much less inconsistent or contrary to public policy, for an employer to elect to take out a policy having such dual obligations. See Yar-

brough v. Peoples Nat. Bank, 162 S.C. 332, 160 S.E. 844; Gifford v. Gifford, 93 N.J.Eq. 299, 115 A. 654; and Schloss v. Fidelity Mut. Life Ins. Co., 193 Misc. 121, 80 N.Y.S.2d 610. The court has no power to change the contract of the parties.

The principle is well stated in 29 Am. Jur. § 1277:

"Endowment, Accumulation, and Tontine Policies.—Under endowment or tontine policies payable to the insured at the expiration of a certain period, if alive, but providing for the payment of a stated sum to a designated beneficiary in case of the insured's death during the period mentioned, the insured and the beneficiary take contingent interests. The interest of the insured in the proceeds of the insurance depends upon his survival of the expiration of the endowment period. Upon the insured's death, within the period, the beneficiary will take, as against the personal representative or the assignee of the insured. Upon the other hand, if the insured survives the endowment period, the benefits are payable to him or to his assignee, notwithstanding a beneficiary is designated in the policy * * *."

■■ Holding, as we do, that Morgan and Evans had a contingent interest in the policy, we think it too plain for argument that possession of the policy is a completely ambiguous circumstance permitting no inference that a change of possession, if proved, would amount to an assignment of the policy. There was thus no basis in fact for the trial court's conclusion that "the defendant assigned whatever interest that he possessed in the policy" unless it be by construing the written agreement of settlement to constitute such assignment.

This agreement, insofar as it seeks to surrender any rights, is couched in words of debts, demands and claims of Morgan against Evans. By no stretch of the meaning of the words could it be said that Morgan had, in relation to his rights in this insurance policy, any claim or demand against Evans Company. His stated rights in the policy were entirely independent of those of Evans and were in no way dependent on action or inaction on the part of the company. In this respect the situation is distinguishable from that before the court in our case of O'Brien v. Elder, 5 Cir., 250 F.2d 275. That case held that in a divorce settlement the wife's surrender of all claims against her husband comprehended her *contingent* interest in an insurance policy on his life because he held the power to cancel her interest merely by exercising his retained right to change the beneficiary. We think the principle there announced cannot be extended beyond the facts of that case.

We, therefore, conclude that Morgan's interest in the endowment features of this policy were not assigned or otherwise transferred to Evans by the written contract and release.

The judgment is reversed and the case is remanded for entry of judgment in favor of the appellant, the defendant below.