# Wytheville.

BALTIMORE & OHIO RAILROAD COMPANY v. FIRST NATIONAL
BANK OF ALEXANDRIA.

JUNE 16, 1904.

1. BANKS AND BANKING—*Checks—Unauthorized Endorsement by Agent—Liability of Bank to Payee.*—Where checks made payable to plaintiff company are, by its agent, endorsed and presented to the bank on which they are drawn, and by it paid, and the several amounts charged to the accounts of the respective drawers of such checks and credit received therefor by the defendant bank, there can be no recovery by plaintiff against defendant under a count for money had and received, although such agent was not authorized to endorse or collect such checks, and the bank therefore paid the money to an unauthorized person.

2. PLEADING AT LAW—*Privity—Money Had and Received.*—Under the facts stated above, there was no privity between plaintiff and defendant, and the action of assumpsit for money had and received could not be maintained.

3. NEGOTIABLE INSTRUMENTS LAW—*Check as Assignment—Acceptance—Certification.*—Under section 127 of the Virginia Negotiable Instruments Act the drawee of a bill does not become liable to the holder unless and until he accepts the same, and under section 132 such acceptance must be in writing. By section 185 the foregoing provisions are made applicable to checks, and under section 189 a check does not operate as an assignment, and the drawee is not liable to the holder unless and until he accepts or certifies such check. There is no privity of contract, therefore, between the payee or holder of a check and the bank upon which it is drawn unless the bank has in writing accepted or certified such check.

Error to a judgment of the Circuit Court of the city of Alex-

andria in an action of *assumpsit,* wherein the plaintiff in error was the plaintiff, and the defendant in error was the defendant.

*Affirmed.*

The opinion states the case.

*Hamilton & Colbert* and *James R. & H. B. Caton,* for the plaintiff in error.

*John M. Johnson* and *Morton & Boothe,* for the defendant in error.

KEITH, P., delivered the opinion of the court.

The plaintiff in error brought its action of trespass on the case in *assumpsit* in the Circuit Court of the city of Alexandria against the First National Bank of Alexandria. The declaration contains numerous counts, the last of which embraces the ordinary money counts in *assumpsit,* and the others are special counts, identical in form with that given below, except as to names, dates, and amounts:

"The plaintiff complains of the First National Bank of Alexandria, Va., defendant, which has been duly summoned to answer the plaintiff in this action, of a plea of trespass on the case, in *assumpsit,* for this, to-wit: That heretofore, to-wit, on the 1st day of October, 1900, in the city aforesaid, the firm of John P. Agnew & Co., depositors with the defendant, made their certain draft or order in writing for the payment of money, commonly called a check, bearing date a certain day and year therein mentioned, to-wit, the day and year aforesaid, and then and there directed the said draft or order to the said defendant, and thereby required the said defendant to pay to the plaintiff, or order, the sum of two hundred and seventy-one and thirty one-hundredths dollars ($271.30), and then and there delivered the said draft or order to the said plaintiff; and the

said plaintiff avers that, after the making of the said draft or order, and before the payment of the said sum of money therein specified, to-wit, on the day and year aforesaid, at the city aforesaid, the said draft or order was presented and shown to the said defendant for payment thereof, and that the said defendant then and there, to-wit, on the day and year aforesaid, accepted the said draft or order, and promised the plaintiff to pay the same according to the tenor and effect thereof, and of its said acceptance thereof, but did not pay the same when due, although demanded by the plaintiff of the said defendant."

The defendant demurred to the declaration, but we prefer to deal with the questions of law arising upon the demurrer when we come to consider the instructions. The defendant pleaded *non assumpsit,* and the case was submitted to the jury, who found a verdict for the defendant upon which the court entered judgment, and the case is before us upon exceptions to rulings made during the trial.

Although there is much conflict in the testimony, we shall consider the case as though the following facts were established: That the B. & O. R. R. Co. had a freight office at Alexandria; that D. P. Hurley was its agent, with authority to make collections of charges for the transmission of freight; that when freight bills were paid by check the checks were required to be made payable to the order of the company; that the checks sued on were presented to the bank and paid upon the endorsement of D. P. Hurley, and the amounts thereof charged to the accounts of the drawers of the checks in the bank and the checks returned to them on settlement of their accounts with the bank; that shortly after the date of the last check sued upon—that is to say, in the month of April, 1901, Hurley left the city of Alexandria while his accounts were under examination by the travelling auditor of the railroad company, which examination disclosed that he was short in his accounts a large sum, for moneys received and unaccounted for by him; that Hurley was

not authorized by the railroad company to endorse checks, and that it never received the money nor the benefit thereof from the checks sued upon; that it does not appear that the bank made any inquiry as to Hurley's authority to endorse checks or receive money thereon, nor as to the necessity therefor, or that the company had any knowledge that Hurley was in the habit of endorsing checks and collecting the proceeds thereof, until he absconded. Such being the facts, the court gave the following instruction:

"The court instructs the jury that they must believe from the evidence that the defendant had and received for the plaintiff the money claimed in the bill of particulars before they can find a verdict for the plaintiff, and although they may believe from the evidence that the checks in evidence were drawn on the First National Bank by depositors of said bank, who had sufficient funds to their credit in said bank to pay the same, and that in settlements between said bank and the said depositors, the said bank charged said depositors with the amount of such checks, and it was allowed a credit for the payment of them, yet the court instructs the jury that such facts created no privity between the said bank and the Baltimore & Ohio Railroad Company, and there can be no recovery by the plaintiff against the defendant under the count for money had and received, even though they may believe from the evidence that the defendant paid the money on said checks to an unauthorized person; that is, to a person not entitled to receive the money on said checks."

That instruction traverses the plaintiff's entire cause of action. If it be a correct statement of the law, no other conclusion was possible than that arrived at by the judgment under review. The instruction presents questions upon which there has been much diversity of opinion among courts and text-writers, but which have, in our judgment, been set at rest by the Act of Assembly entitled, "An Act to revise, arrange and consolidate as one act the laws relating to negotiable instruments

(being an act to establish a law uniform with the laws of other States on that subject), approved March 3, 1898.

Section 127 of that act declares, that "A bill of itself does not operate as an assignment of the funds in the hands of the drawee available for the payment thereof, and the drawee is not liable on the bill unless and until he accepts the same." Section 132 provides, that "The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money." Section 185 declares, that "A check is a bill of exchange drawn on a bank payable on demand. Except as herein otherwise provided, the provisions of this act applicable to a bill of exchange payable on demand apply to a check." And section 189 is as follows: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder, unless and until it accepts or certifies the check."

Now, if there be any virtue in that law, the checks in question did not assign to the holder the funds, or any part thereof, of their respective drawers on deposit with the defendant; nor could it have that effect unless and until the checks were certified, and section 185 expressly declares that the provisions of that act, with respect to bills of exchange payable on demand, shall apply with equal force to checks; and turning to section 132, already quoted, we find that the acceptance must be in writing and signed by the drawee in order to constitute a cause of action by the holder against the bank.

This opinion might be greatly prolonged by citation of conflicting cases, and a discussion of the discordant views entertained by courts and text-writers of the greatest ability upon these questions; but the object, as we understand it, of the codification of the law with respect to negotiable instruments

was to relieve the courts of this duty, and to render certain and unambiguous that which had theretofore been doubtful and obscure, so that the business of the commercial world, largely transacted through the agency of negotiable paper, might be conducted in obedience to a written law emanating from a source whose authority admits of no question.

We are of opinion that the instruction conforms to the provisions of the statute, and that it concludes the case in favor of the defendant in error.

*Affirmed.*