Newman, J.
The checks in question, bearing the forged signature of McKain, manager, were cashed at Franklin, Pennsylvania, and were transmitted by a bank in that city through several other banks whose indorsements the checks bore when they were paid by plaintiff in error. For the purpose of this case, however, the indorsements of the several banks may be disregarded and the checks treated as though they were presented directly to plaintiff in error by the person who forged the signature of McKain, manager.
In 1902 the legislature of Ohio passed the negotiable instruments act. It follows generally the English bills of exchange act and is substantially like the act adopted by practically all the states of the Union. It is entitled “An act to establish a law uniform with the laws of other states on negotiable instruments.” It is carried into the General Code, Sections 8106 to 8302. The courts of the country being in conflict in their decisions respecting negotiable instruments, the purpose of the passage of the act was to establish certain fixed rules governing negotiable instruments and to bring about a uniform system of laws on the subject and thereby do away with the confusion that had existed. In the adoption of the act the legislature intended to form a complete system of laws relating to negotiable instruments and to cover the whole subject' *409 so far as it could be done by statute. In any case not provided for in the act the rules of the law merchant govern. Section 8300. It follows then that where a case is provided for the statute must govern.
In the case here there is involved the right of the holder of a check to maintain an action against the drawee. If this point is specifically dealt with in the negotiable instruments act, the law on the subject should be ascertained by interpreting the language used in its provisions relating thereto. What the state of the law was previous to the adoption of the act need not be considered. Nor should earlier decisions of the court be resorted to if the provisions of the act are not of doubtful meaning. In fact, the act does not purport to be, nor is it, in every instance, a codification of the then existing law. Some of its provisions are declaratory of the existing law, while others alter and change the law as theretofore declared. In Rockfield v. Bank, 77 Ohio St., 311, it was held that by force of certain provisions of the negotiable instruments act the law on the subject there under consideration was changed.
Section 8294 reads as follows: “A check does not of itself operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check.” This we think is intended to. cover the liability of a bank to the holder of a check, and he can recover from the bank only when he brings himself within the provisions of this statute. If a check is neither ac *410 cepted nor certified there is no liability on the part of the bank to the holder. There is no claim made that the checks in question here were certified. But it is insisted by counsel for defendant in error, and it was the holding of the court of appeals, that when the bank stamped “The Elyria Savings & Banking Co. Paid Sep 10 1909 E. M. Rice, Cashier,” and charged the same to the account of the drawer, there was an acceptance and the banking company thereby became liable to the rightful holder. It is the settled law that a bank is obliged to pay on the order of the drawer to the person named in the check. It must follow the order with the utmost strictness. If it pay upon a forged indorsement, the check cannot be charged against the drawer, unless the bank, upon some principle of estoppel or on account of some negligence chargeable to the drawer, might claim protection. So that as between these two parties, the drawer and drawee, there was no payment. In the negotiable instruments act it is provided that the provisions applicable to a bill of exchange payable on demand apply to a check. Section 8290. Section 8237 provides that the acceptance of a bill of exchange is the signification of the drawee of his assent to the order of the drawer, but it further provides that the acceptance must be in writing and signed by the drawee and it must not express that the drawee will perform his promise by any other means than the payment of the money. Under the negotiable instruments act acceptance means an acceptance completed by delivery or notification. < Section 8295. Did the stamping of *411 the checks in question amount to an acceptance as contemplated by this statute ? Payment is the natural and legitimate end of á check.- Acceptance is essentially different. As has been said, it is the beginning of the active career of the instrument and there is added to its original vitality a new element of force and strength calculated to prolong its existence and widen its sphere of usefulness. Acceptance contemplates a promise on the part of the drawee to do something. Where there is an acceptance a contractual relation arises between the drawee and the holder. The stamping ' of these two checks by the bank and the charging of them to the account of the drawer was certainly not an acceptance within the meaning of these provisions.
Counsel for defendant in error rely upon the case of Dodge v. The Natl. Exchange Bank, 20 Ohio St., 234, and 30 Ohio St., 1, as decisive of the case at bar. In the Dodge case (30 Ohio St., 5) this language is used: “The paymaster, by drawing and delivering the check in question, in payment of plaintiff’s voucher, set apart and appropriated for the plaintiff’s use so much of his funds in defendant’s hands as would be necessary for its payment. This act of. appropriation the plaintiff conclusively ratified by bringing this action. The defendant also assented to this appropriation, by accepting his check, by assuming to pay it, and by claiming and receiving credit fr*si the drawer for its payment.” It was upon the theory that the drawing and delivering of the check operated as an assignment pro tanto of the *412 funds of the drawer in the bank that the Dodge case was decided. This doctrine was not recognized in a later Ohio case, Covert v. Rhodes, 48 Ohio St., 66, where it was held that a check does not of itself operate as an assignment of any part of the funds to the credit of the drawer with the bank. But whether or not that was the law in Ohio prior to the adoption of the negotiable instruments act is unimportant. It is not the law now. The rule announced in the Dodge case has been discarded, and it is expressly provided in Section 8294 that a check does not of itself operate as an assignment of any part of the funds to the credit of the drawer with the bank. In view of the provisions of the negotiable instruments act we cannot adhere to the rule announced in the Dodge case.
Seventh Natl. Bank v. Cook, 73 Pa. St., 483, and Pickle v. Muse, 88 Tenn., 380, are cited by counsel for defendant in error in support of their contention. In these cases it was held that where a bank pays on a forged, indorsement the true payee can maintain an action against the bank. At the time these cases were decided the negotiable instruments act had not been adopted by Pennsylvania or Tennessee, and we doubt very much whether the courts of those two states would follow this holding in the face of its provisions.
In B. & O. Rd. Co. v. First Natl. Bank, 102 Va., 753, the facts were very similar to those in the case here. The court interpreted certain sections of the Virginia code which are identical with Sections 8237, 8290 and 8294, supra. The court used this language, which is in point here:
*413 “Now, if there be any virtue in that law, the checks in question did not assign to the holder the funds, or any part thereof, of their respective drawers on deposit with the defendant; nor could it have that effect unless and until the checks were certified, and section 185 expressly declares that the provisions of that act, with respect to bills of exchange, payable on demand, shall apply with equal force to checks; and turning to section 132, already quoted, we find that the acceptance must be in writing and signed by the drawee in order to constitute a cause of action by the holder against the bank.
“This opinion might be greatly prolonged by citation of conflicting cases, and a discussion of the discordant views entertained by courts and text-writers of the greatest ability upon these questions; but the object, as we understand it, of the codification of the law with respect to negotiable instru-. ments was to relieve the courts of this duty, and to render certain and unambiguous that which had theretofore been doubtful and obscure, so that the business of the commercial world, largely transacted through the agency of negotiable paper, might be conducted in obedience to a written law emanating from a source whose authority admits of no question.”
Counsel for defendant in error say that in the Virginia case it does-not appear that the chécks there were stamped as they were in the case at bar, and had they been a different conclusion might have been reached by the court. It does appear, however, that the amounts of the checks, were *414 charged to the account of the drawers and the same returned on settlement of their accounts with the bank. The stamping of the two checks in the present case was simply a method adopted by the bank for cancelling or extinguishing the checks. See also Clark & Co. v. Warren Sav. Bank, 31 Pa. Super. Ct., 647.
We call attention to Section 11225-1, General Code. This section was passed in 1911, several years after the adoption of the negotiable instruments act. It fixes the time within which an action may be brought against a bank ©n account of the payment on a forged or raised check. This language is used: “No bank which has paid and charged to the account of a depositor any money on a forged or raised check issued in the name of said depositor shall be liable to said depositor for the amount paid thereon unless,” etc.
It is to be observed that the only liability mentioned is the liability of the bank to the depositor. No mention is made of the holder or payee of the forged check.
We are of the opinion that when the legislature enacted Section 8294 it intended to cover the subject of the liability of a bank to the holder of a check. It prescribed when and when only there is a liability to the holder. In the absence of the conditions therein prescribed no right of action exists in favor of the holder. In the present case, the checks in question not having been certified or accepted within the meaning of Section 8294, there was no right of action on the part of the defendant in error against the banking company, *415 and the court of common pleas was correct in directing a verdict in favor of the latter company.

Judgment of the court of appeals reversed and that of the common pleas affirmed.

Johnson, Donahue and Matthias, JJ., concur.