FRED B. ANSCHUTZ, ALSO KNOWN AS F. B. ANSCHULTZ, APPELLANT, v. THE CENTRAL NATIONAL BANK OF COLUMBUS, NEBRASKA, A BANKING CORPORATION, APPELLEE.

112 N. W. 2d 545

Filed December 22, 1961. No. 35057.

*Richards, Yost & Schafersman,* for appellant.

*Walter, Albert, Leininger & Grant,* for appellee.

Heard before SIMMONS, C. J., CARTER, MESSMORE, YEAGER, SPENCER, BOSLAUGH, and BROWER, JJ.

BROWER, J.

This is an action brought by Fred B. Anschutz, appellant and plaintiff in the trial court, against the Central National Bank of Columbus, appellee and defendant, to recover the aggregate sum of $9,000 on two checks, each for $4,500, drawn on the defendant bank by M. H. Van Berg, owner-manager of Columbus Sales Pavilion, in favor of the plaintiff as payee under the name of F. B. Anschultz. It is alleged the plaintiff's signature as payee and endorser on the back of the check is a forgery.

The trial court sustained a general demurrer to the petition. The plaintiff elected to stand on the petition and plead no further. Thereupon, the trial court dismissed the petition and the plaintiff has perfected an appeal from the ruling of the court on the demurrer and dismissal.

Appellant assigns as error the court's action in striking certain words from the petition; in sustaining the demurrer and dismissing the action; and in holding by its ruling that the true owner of the check paid by the defendant bank to a third party on the forged endorsement of the payee was not entitled to collect from the bank even in the absence of the owner's negligence.

The petition sets out two causes of action, one on each check. Except for the dates of the checks they are the same. The substance of the first cause of action will be set out and it will be discussed. The second cause of action on which the check was dated September 9, 1959, with corresponding dates, will not again be referred to.

The substance of each paragraph of the first cause of action with the numbered portion as set out therein here follows with the exception of the fourth and sixth

paragraphs which are quoted in full because of the ruling of the court in striking certain portions thereof.

The first and second paragraphs allege the defendant's corporate existence and its business and that the drawer of the check was a depositor in defendant bank on September 5, 1959. The third paragraph states that on or about that day the drawer made a check payable to the order of the plaintiff for $4,500, and refers to the copy of the check and endorsements attached as an exhibit. The fourth paragraph reads in full as follows: "That thereafter on or about September 5, 1959, one P. COLUCCI, obtained possession of said check from said depositor for the pretended sole purpose of forwarding said check to the plaintiff herein." The fifth paragraph states that the check had not been endorsed at the time P. Colucci obtained possession of it. The sixth paragraph reads in full as follows: "That thereafter subsequent to September 5, 1959, said P. COLUCCI wrongfully cashed said check and thereafter said check was presented to defendant by one of the subsequent endorsers thereon for payment and defendant paid said check and charged the amount thereof to the account of said depositor, the drawer thereof; and that plaintiff did not then or at any time thereafter receive the proceeds of said check or any part thereof." The seventh and eighth paragraphs allege plaintiff's signature on the back of the check was not his signature, but a forgery, and that by reason of the facts set out the drawee bank received $4,500 from the drawer that belonged to the plaintiff which it has failed to deliver and is indebted to him in that amount. The prayer is for $9,000 on both causes of action.

The fourth paragraph set out in full originally stated that Colucci obtained possession of the checks "by artifice, fraud and trick," and the sixth paragraph stated the defendant "negligently" cashed the check. The defendant filed a motion to make the petition more definite and certain by requiring plaintiff to set out the

facts constituting the "artifice, fraud and trick" and the "negligence" mentioned, and in other particulars.

On a hearing the court ordered the quoted words stricken and otherwise in all respects overruled the motion.

The words stricken constituted nothing but the conclusion of the pleader. They added nothing to the petition in the absence of pleading further facts and striking them was not error.

"A general demurrer admits all allegations of fact in the pleading to which it is addressed, which are issuable, relevant, material, and well pleaded; but does not admit the pleader's conclusions of law or fact." Elliott v. City of Auburn, 172 Neb. 1, 108 N. W. 2d 328. No prejudice arose from their being stricken. Combs v. Owens Motor Co., 121 Neb. 5, 235 N. W. 682.

The remaining question is whether or not the petition states a cause of action, which depends upon whether the payee of a check has a cause of action against a drawee bank which has paid a check upon the forged endorsement of the payee when presented for payment by a subsequent endorser.

This question involves the application and construction of two sections of the Uniform Negotiable Instruments Law enacted by Nebraska in 1905 which read as follows: "A check of itself does not operate as an assignment of any part of the funds to the credit of the drawer with the bank, and the bank is not liable to the holder unless and until it accepts or certifies the check." § 62-1,189, R. R. S. 1943.

"The acceptance of a bill is the signification by the drawee of his assent to the order of the drawer. The acceptance must be in writing and signed by the drawee. It must not express that the drawee will perform his promise by any other means than the payment of money." § 62-1,132, R. R. S. 1943.

Prior to the passage of the Uniform Negotiable Instruments Law, this court said that: "A check drawn on

funds in a bank is an appropriation of the amount of the check in favor of the holder thereof—in effect an assignment of the amount of the check; and the holder, upon refusal of the bank to pay the same, where such funds have not been drawn out before its presentation, may bring an action thereon in his own name." Fonner v. Smith, 31 Neb. 107, 47 N. W. 632, 28 Am. S. R. 510, 11 L. R. A. 528. This case was one decided before the enactment of the Uniform Negotiable Instruments Law, cited with approval in Columbia Nat. Bank v. German Nat. Bank, 56 Neb. 803, 77 N. W. 346, and Falls City State Bank v. Wehrli, 68 Neb. 75, 93 N. W. 994.

These particular cases which we have cited laid down the rule common to that of the courts of last resort in many states before the passage of the Uniform Negotiable Instruments Law that the giving of a check operated as an assignment pro tanto of the drawer's account and it followed that there was privity of contract between the payee or holder of the check and the drawee bank.

Before the enactment of the Uniform Negotiable Instruments Law there was great confusion as to the rights of a payee against the drawee bank which had cashed a check on a forged endorsement. The courts of most of the states which followed the rule that a check operated as an assignment of the drawer's account held that the true owner could thereafter sue the drawee bank because the payee was in privity of contract with the drawee by virtue of the assignment. There was, however, a line of cases which held to the contrary. The leading case in this line of authority was the early one of First Nat. Bank of Washington v. Whitman, 94 U. S. 343, 24 L. Ed. 229. The court there held there could not be a recovery in such a situation, stating: "The payee of a check before it is accepted by the drawee, cannot maintain an action upon it against the latter, as there is no privity of contract between them. * * * Payment to a stranger upon an unauthorized indorsement does not operate as an accept-

ance of the check, so as to authorize an action by the real owner to recover its amount as upon an accepted check."

That case was followed and quoted by many cases before the passage of the Uniform Negotiable Instruments Law. Since the adoption of this act it is still so cited and followed. Many courts now hold that the particular sections of that act set out herein were adopted for the purpose, in part at least, of rendering the law in that case applicable generally and to make the commercial rules clear, unambiguous, and uniform. Because we can find few decisions of this court touching upon this question, and none passing precisely thereon, the following group of cases determined after the passage of the act from the courts of other states are here cited. Miller v. Northern Bank, 239 Wis. 12, 300 N. W. 758, 137 A. L. R. 870; Gordon Fireworks Co. v. Capital Nat. Bank, 236 Mich. 271, 210 N. W. 263; Elyria Savings & Banking Co. v. Walker Bin Co., 92 Ohio St. 406, 111 N. E. 147, L. R. A. 1916D 433, Ann. Cas. 1917D 1055; Baltimore & O. R. R. Co. v. First Nat. Bank, 102 Va. 753, 47 S. E. 837; Whorf v. Seattle Nat. Bank, 173 Wash. 629, 24 P. 2d 120; Fidelity & Deposit Co. v. Fort Worth Nat. Bank (Tex. Com. App.), 65 S. W. 2d 276; Jones v. Bank of America Nat. Trust & Savings Assn., 49 Cal. App. 2d 115, 121 P. 2d 94; 6 Zollmann, Banks and Banking (Perm. Ed.), § 4251, p. 458. They all hold that the payee of the check in suit had no cause of action against the drawee bank which had paid the check upon the forged endorsement of the payee.

Most of the cases in this group are those where the court's opinion discussed the question as one where the action was on contract or for money had and received and the question as to whether an action for conversion of the funds might be maintained is not mentioned. Neither does it appear in many of them whether or not the pleadings in the case before the particular court could have been construed as stating a cause of

action in conversion. The plaintiff here maintains that the petition states a cause of action for money had and received, but that if it does not it certainly states one for the conversion of the funds. It would appear that the payee in these cases never had any funds deposited in the bank and that therefore his funds could not have been converted. Some of the decisions cited discuss the law and hold the payee has no cause of action under either theory. Among them is Gordon Fireworks Co. v. Capital Nat. Bank, *supra*, where the court, discussing the case, said: "The case is ruled by Lonier v. Savings Bank, 149 Mich. 483, where the bank cashed a check in like circumstances: 'This court is committed to the doctrine that the holder of an unaccepted check has no right of action against the drawee, and that the check does not operate as an assignment of the amount named in it, in the drawee's hands, a doctrine supported by the federal case (First Nat. Bank of Washington v. Whitman, 94 U. S. 343, 24 L. Ed. 229) mentioned.'" The court thereafter in the cited case sets out the same sections of the Uniform Negotiable Instruments Law of its state in practically the same words as those of our own. Still later in the same cited case the court continues in regard to the cause of action set out in tort. It states that: "Appellant argues that our cases cited have been in assumpsit and that a different rule should be applied here for the reason that its declaration has a count for conversion. The bank did not convert funds of plaintiff. The check was not an assignment of the amount named in it. Again the Lonier case is the answer."

In Miller v. Northern Bank, *supra,* the same holding was had that there was no cause of action stated by the payee either in contract or in tort for conversion.

There are decisions in conflict with these holdings. Generally speaking, since the passage of the Uniform Negotiable Instruments Law those cases that have allowed recovery have stated that under that act no action remains in contract or for money had and received,

but one may be maintained in conversion. There are a few holding that an action for money had and received may be maintained.

Among the authorities holding that the payee may maintain such an action are the following: A. Paul Goodall Real Estate & Ins. Co. v. North Birmingham American Bank, 225 Ala. 507, 144 So. 7; Blacher & S. Co. v. Granite Trust Co., 284 Mass. 9, 187 N. E. 53; State v. First Nat. Bank of Albuquerque, 38 N. M. 225, 30 P. 2d 728; Hartford Accident & Indemnity Co. v. Bear Butte Valley Bank, 63 S. D. 262, 257 N. W. 642.

In State v. First Nat. Bank of Albuquerque, *supra,* where the recovery was allowed in conversion, the difference in opinion between the two lines of authority may be seen by setting out a quotation from the dissenting opinion as follows: "Conceding the logic of the theory espoused by the majority, I am still unconvinced and believe it my duty to register dissent. * * * I refuse to hurdle or build a road around the Negotiable Instruments Law. To permit recovery on the theory of conversion and deny it in assumpsit is simply providing an ingenious legal escort to conduct the true owner of a check to a judgment which I believe the Negotiable Instruments Law prohibits. * * * I believe that it is consistent with the purpose and spirit of the Negotiable Instruments Law to adopt the view of the United States Supreme Court as laid down in the Whitman Case irrespective of the theory under which the proceeding was instituted. In this there is no hardship. Each party to a check transaction has his remedy. The Negotiable Instruments Law was adopted for the purpose of uniformity, and it is important to the commercial life of this nation that a uniform rule of construction should be adopted by the different jurisdictions in determining the rights of all parties to a negotiable instrument."

The only Nebraska case which we find or to which we are cited after the passage of the Uniform Nego-

tiable Instruments Law touching the question is Gasper v. Security State Bank, 109 Neb. 495, 191 N. W. 654. That was a situation where the drawer brought action against the drawee bank which had cashed the check on a forged endorsement. It too was decided on a demurrer to the petition. The principal question before the court, however, was whether there had been a valid certification by the bank on the authority of the drawer, owner, or holder, or whether it was certified by procurement of the forger and hence not certified or accepted at all. The court held that under the allegations of the petition it appeared to be a certified check and that the drawer could not recover. It clearly appears that the holding was based on the reasoning that the check being validly certified there was an assignment of the funds under section 62-1,189, R. R. S. 1943. The bank therefore was bound by privity of contract with the true owner and holder of the check and its contract with the drawer was terminated and at an end, and the funds belonged to the payee or rightful holder whose funds were converted. In the decision the court held: "Under our negotiable instruments law * * * requiring acceptances to be in writing, an unauthorized payment of a check by the drawee bank on a forged indorsement will not constitute an acceptance." This holding also indicates that if the check had not been held to have been certified the action of the plaintiff drawer would have been proper. This is because under those circumstances he would have been in privity with the bank and it would have been his funds that were converted. Also in the discussion it cites, apparently with approval, Southern Trust Co. v. American Bank of Commerce & Trust Co., 148 Ark. 283, 229 S. W. 1026, 14 A. L. R. 761, which case holds that the payee could not recover from the drawee bank on a check on which the endorsement was forged.

It would appear from Gasper v. Security State Bank, *supra,* that this court has hitherto considered the cor-

rect rule in case of a forged endorsement to be that whoever is in privity of contract with the drawee bank and whose funds are in the bank is the proper person to maintain the action. In the absence of certification or acceptance under the Uniform Negotiable Instruments Law it is the drawer of the check. If it had been certified or accepted the funds are by reason thereof assigned and the contract is a new one with the true owner and holder of the check with whom the bank thereafter is in privity of contract.

Neither under the rule laid down in First Nat. Bank of Washington v. Whitman, *supra,* nor in the cases following it, either before or after the passage of the Uniform Negotiable Instruments Law, is responsibility of a drawee bank for cashing a check on a forged endorsement denied as to all persons. The rule simply denies the liability of the bank to the payee of the check unless it has been certified or accepted. Until it is certified or accepted the liability is to its customer with whom it deals and with whom it has privity of contract and whose funds it has on deposit. Plaintiff urges that these rules are only a legal fiction of law which are outmoded and should not now be applied. If so the Legislature of this state and many others have seen fit to adopt it as the statutory law. The rule would further appear to have some practical application. Checks are the principal means of transferring credits and it is of great importance that they be promptly cashed. In many instances the drawee bank has no means of verifying the authenticity of endorsements made by those who are not their customers and who are often living in remote localities and whose signatures are wholly unknown to it. In such case it would appear that there is a reasonable basis for restricting the bank's liability to the customer with whom it deals. This leaves the question relating to the proof of the matters with respect to the forgery and the negligence, if any, of the maker and payee to be determined in an action between them.

A great many such cases turn on the question of whether or not the forger was the agent of the drawer or payee and the circumstances under which he came into possession of the instrument concerning which the bank is in ignorance.

We hold a drawee bank which unwittingly pays a check to a subsequent endorser where the endorsement of the payee was previously forged is not liable in an action by the payee either on contract or for money had and received or for conversion.

The judgment of the trial court in sustaining the demurrer and dismissing the action is therefore affirmed.

AFFIRMED.