This appeal presents the following question: Under what circumstances may a third party bring a claim of bad-faith failure to pay against an insurer of the party who injured the third party? Danny Williams appeals the Jefferson Circuit Court's summary judgment in favor of State Farm Mutual Automobile Insurance Company ("State Farm") with regard to Williams's bad-faith claims against State Farm. We affirm.
 I. Material Facts
The material facts, viewed, as we must, in the light most favorable to Williams, are as follows.
On June 17, 2002, Danny Williams was involved in an automobile accident; Frank Shaw was driving the other vehicle involved in the accident. Shaw, who was killed in the accident, was insured by State Farm. While Williams suffered no personal injuries, his tractor-trailer was damaged.
State Farm opened a claim, and the matter was assigned to Derek Kidd, a State Farm claim representative, for handling. Kidd received a demand from Williams's insurance carrier, Western World Insurance Group, seeking reimbursement of $12,000 Western World had paid Williams on the claim relating to his damaged tractor-trailer, as well as reimbursement of Williams's $1,000 deductible. Attached to that demand was a copy of an appraiser's report obtained by Western World; the appraiser had inspected the tractor-trailer on June 24, 2002. The report contained three independent quotes valuing the tractor-trailer at $15,000, $13,000, and $13,000. The average of the three values was $13,667. The maximum payable under Williams's policy with Western World was $12,000, plus Williams's deductible, for a total of $13,000. Western World was entitled to the salvage. Therefore, if the tractor-trailer was declared a total loss and was not repaired, Williams would lose between $667 and $2,000, depending on which value figure was used.
The appraiser's report shows that the tractor-trailer was in "very good shape" before the accident. Therefore, Williams delayed accepting the tractor-trailer as a total loss while efforts were made to secure an axle that could be used to repair the tractor-trailer. No axle could be located, and Williams then accepted the evaluation of the tractor-trailer as a total loss. On August 5, 2002, State Farm reimbursed Western World the $12,000 it had paid to Williams. State Farm paid Williams directly $1,000, as reimbursement for his deductible.
On September 17, 2002, State Farm received a letter from Williams's attorney, who presented an "offer to settle the balance *Page 74 
of Mr. Williams'[s] claim against your insured." The settlement demand included $965 in towing fees plus $5,890 in lost profits, which Williams computed by taking his daily net profit and multiplying it by the 29 "working days" he claims he was without the tractor-trailer (June 18 to July 26).
On September 12, 2002, Kidd wrote Williams's attorney, stating that State Farm would agree to reimburse Williams for the towing charges, but claimed that Williams's demand for 29 days of lost profits was excessive. Specifically, Kidd noted that Williams's tractor-trailer was inspected on June 24 and determined to be a total loss. Kidd stated the claim should have been settled six days after the inspection and offered Williams 11 days of lost profits for a total of $3,420.78. Coupled with the towing charges, State Farm proposed to pay Williams $4,385.78, contingent upon Williams's execution of a full release in favor of Shaw's estate.
Williams's lawyer and Kidd continued to correspond. Williams's lawyer claimed that the delay in settling was caused by unsuccessful attempts to repair the tractor-trailer, and Kidd responded that any delay should not be attributed to an attempt to repair the tractor-trailer because the tractor-trailer was a total loss and could not be repaired. The parties could not agree as to the amount of lost profits, and Williams sued State Farm in the Jefferson Circuit Court, alleging bad-faith failure to pay. State Farm filed a motion for a summary judgment, which the trial court granted. This appeal followed.
 II. Standard of Review
Our review of a summary judgment is de novo, and we apply the following principles:
 "The standard of review applicable to a summary judgment is the same as the standard for granting the motion, that is, we must determine whether there was a genuine issue of material fact and, if not, whether the movant was entitled to a judgment as a matter of law. Our review is further subject to the caveat that this Court must review the record in a light most favorable to the nonmovant and resolve all reasonable doubts against the movant. Wilson v. Brown, 496 So.2d 756, 758 (Ala. 1986); Harrell v. Reynolds Metals Co., 495 So.2d 1381 (Ala. 1986). See also Hanners v. Balfour Guthrie, Inc., 564 So.2d 412
(Ala. 1990).
 ". . . Ala. Code 1975, § 12-21-12, mandates that the [nonmovant] meet [its] burden by `substantial evidence.' Bass v. SouthTrust Bank of Baldwin County, 538 So.2d 794, 797-98 (Ala. 1989). Under the substantial evidence test the nonmovant must present `evidence of such weight and quality that fair-minded persons in the exercise of impartial judgment can reasonably infer the existence of the fact sought to be proved.' West v. Founders Life Assurance Co. of Florida, 547 So.2d 870, 871 (Ala. 1989)."
Brewer v. Woodall, 608 So.2d 370, 372 (Ala. 1992).
 III. Analysis
In Howton v. State Farm Mutual Automobile Insurance Co.,507 So.2d 448, 450 (Ala. 1987), we acknowledged "the fundamental and well-established general principle that an accident victim (a third party to a liability insurance contract) cannot maintain a direct action against the insurer for the alleged liability of the insured where the legal liability of the insured has not been determined by judgment." However, we also held that a third party could bring a direct action against an insurer under such circumstances "where the insurer undertakes a new andindependent obligation directly with a nonparty to the insurance contract in its efforts to negotiate *Page 75 
a settlement of the third party's claim." 507 So.2d at 450-51
(emphasis added). A "new and independent obligation" exists when "the insurer, acting independently of its insured, enters into a contract with, or commits a tort against, a third-party claimant." 507 So.2d at 450.
Williams claims that his action is not a direct action against State Farm based on the alleged liability of Shaw; instead, Williams asserts that in refusing to pay the amount Williams demanded for his alleged lost use of his tractor-trailer, State Farm has committed the tort of bad-faith refusal to pay an insurance claim under Alabama's statute prohibiting such a refusal to pay, codified at Ala. Code 1975, § 27-12-24. That section provides:
 "No insurer shall, without just cause, refuse to pay or settle claims arising under coverages provided by its policies in this state and with such frequency as to indicate a general business practice in this state, which general business practice is evidenced by:
 "(1) A substantial increase in the number of complaints against the insurer received by the insurance department;
 "(2) A substantial increase in the number of lawsuits against the insurer or its insureds by claimants; and
"(3) Other relevant evidence."
Williams contends that his action against State Farm is allowed under the Howton rule; we disagree. Howton involved a factual scenario similar in some respects to the one here: an automobile accident in which the driver of one car was insured by State Farm, which negotiated directly with the driver of the other car, who was not insured by State Farm. We held that the plaintiffs could maintain certain direct actions against State Farm; however, this holding was driven by the nature of State Farm's negotiations with the plaintiffs:
 "`Following the collision, State Farm Mutual Automobile Insurance Company agreed with the plaintiffs for the plaintiffs to have their vehicle repaired by Long-Lewis Ford and the defendant State Farm Mutual Automobile Insurance Company agreed, prior to the time of the repairs, to pay for the costs of the repairs. In reliance [on] the agreement, the plaintiffs delivered their automobile to Long-Lewis Ford and Long-Lewis Ford repaired it. Following the repairs, State Farm Mutual Automobile Insurance Company refused to pay the bill unless the plaintiffs endorsed a check that contained a general release. Demand was made on State Farm to pay for the property damage, with a reservation of plaintiffs' rights to claim damages for personal injury, and the demand was refused.'"
Howton, 507 So.2d at 449 (quoting the trial court's order) (emphasis added).
Unlike Howton, where State Farm "agreed, prior to the time of the repairs, to pay for the costs of the repairs,"507 So.2d at 449, here there was no "new and independent obligation" created by State Farm in its negotiations with Williams. The evidence before the trial court indicates that State Farm agreed to pay Williams a certain amount for the lost use of his tractor-trailer, and Williams disputed the sufficiency of that amount. Had Williams accepted that amount and had State Farm then reneged or tried to place conditions on the distribution of the amount, then, under Howton, Williams might be able to, for example, bring a breach-of-contract action against State Farm on the basis of the "new and independent obligation" created byState Farm. Williams's bad-faith claim is actually a direct action against State Farm based on Shaw's alleged liability, even if dressed in different clothes.
However, it is well established that a party cannot bring an action against an *Page 76 
insurance company for bad-faith failure to pay an insurance claim if the party does not have a direct contractual relationship with the insurance company. See, e.g., State Farm Fire Cas. Co. v.Slade, 747 So.2d 293, 304 (Ala. 1999) (noting that "`[T]he plaintiff in a "bad faith refusal" case has the burden of proving: (a) an insurance contract between the parties and a breach thereof by the defendant. . . .'" (quoting National Sec.Fire Cas. Co. v. Bowen, 417 So.2d 179, 183 (Ala. 1982)));Aplin v. American Sec. Ins. Co., 568 So.2d 757, 758 (Ala. 1990) (stating that "proof of the existence of an insurance contract between the parties is a threshold requirement in a bad faith claim"). This rule accords with the language of § 27-12-24, which is clearly directed at regulating insurers' contractual relationships with their insureds for the protection of the insureds, not third parties. It is undisputed that Williams has no contract of insurance with State Farm and that Williams procured no judgment against Shaw's estate before bringing his action against State Farm. Given the above, State Farm was entitled to a judgment as a matter of law.
 IV. Conclusion
We conclude that there was no genuine issue of material fact and that State Farm was entitled to a judgment as a matter of law. Therefore, the trial court's summary judgment is affirmed.[1]
AFFIRMED.
LYONS, BROWN, JOHNSTONE, and WOODALL, JJ., concur.
[1] Williams raises other matters on appeal. However, our resolution of this issue precludes the need to reach those other matters.